## PALMER v. OREGON SHORT LINE R. CO.

No. 1873.   Decided November 23, 1908 (98 Pac. 689).

1. RAILROADS—TRESPASSERS ON TRACK—CHILDREN. A railway company's duty to discover trespassers on its track is the same whether the trespasser be a child or an adult.

2. RAILROADS—TRESPASSERS—COMPANY'S DUTY. On discovering an adult trespasser, or one of an age of discretion, on the track, an engineer need merely give warning, having the right to assume that the trespasser will leave the track; but when a child or helpless adult is, or in the exercise of ordinary care ought to be, discovered, the engineer must at once act upon the assumption that the child will remain, and, to prevent injury, he must slow down or stop the train before reaching the child, if that can be done without serious danger to the passengers.[1]

3. RAILROADS—RIGHT OF WAY—IMPLIED LICENSES. The public may acquire an implied license to pass over a railroad right of way by the company permitting such use with knowledge thereof, but to establish such a license the use must have been definite, long, open and continuous.

4. RAILROADS—RIGHT OF WAY—USE OF TRACK BY PUBLIC—DUTY TO KEEP LOOKOUT. A railway track need not be used so extensively by the public and for so long a time as to establish an implied

---

[1] Young v. Clark, 16 Utah 42, 50 Pac. 832.

license before the company may be required to keep a reasonable lookout for the persons on the track, such duty depending upon the place and the surrounding circumstances, but the use must be such as to apprise the company that the track is being used by a considerable number of persons with some regularity.

5. RAILROADS—INJURY TO PERSONS ON TRACK—NEGLIGENCE—JURY QUESTION. In an action for injury to a person on a railroad track at a point frequently used by the public, where no implied license exists, it is a jury question whether the company has exercised ordinary care.

6. RAILROADS—INJURY TO PERSON ON TRACK—COMPANY'S DUTY— LAW QUESTIONS. In an action against a railway company for injury to a trespasser on a track, whether there was a duty, where the facts are not in dispute, or, if in dispute, whether those most favorable to the trespasser created a legal duty, is a law question.

7. RAILROAD'S—PERSONS ON TRACK—COMPANY'S RIGHTS. Generally, a railway company need not anticipate trespassers upon its tracks outside of cities and towns, nor keep a lookout for trespassers.

8. RAILROADS—INJURY TO PERSONS ON TRACK—NEGLIGENCE—JURY QUESTION. Where, in an action against a railway company for injury to a trespasser on a track, the character of the place where the accident occurred is in dispute, or the evidence is conflicting as to the number of people who used the track and the character of the use, the company's negligence is a jury question.

9. CARRIERS—PASSENGERS—CARRIER'S DUTY. A passenger stands in a special relation to the carrier, being on its train by special invitation and under a contract requiring the carrier to carry him safely.

10. CARRIERS—RIGHTS OF PUBLIC. Any one desiring to avail himself of a carrier's transportation facilities may do so, and for that purpose may at all proper times and places claim access to its property devoted to that purpose, and in the exercise of that right the company must exercise reasonable care for his protection.

11. RAILROADS—TRESPASSERS—COMPANY'S DUTY. A railway company owes a trespasser no greater duty than any other owner of property would owe in the same circumstances.

12. DEATH—NEGLIGENT DEATH OF CHILD—CONTRIBUTORY NEGLIGENCE. Contributory negligence may be invoked against a parent suing for the death of an infant.

13. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE. The defense of contributory negligence is always available against an adult or one having attained the years of discretion.

14. NEGLIGENCE—TRESPASSERS—CHILDREN—TURNTABLES. An exception to the rule that a railroad company is under no greater duty to discover a trespassing child in peril than to discover an adult trespasser arises in cases of places attractive to children.[2]

15. NEGLIGENCE—TRESPASSERS—PLACES ATTRACTIVE TO CHILDREN. A railroad track in the open country is not attractive nor alluring to children within the exception to the rule that a railroad company owes a trespassing child no greater duty to discover its peril than it owes to an adult trespasser.

16. RAILROADS—TRESPASSING—CHILDREN ON TRACK—EVIDENCE—SUFFICIENCY. Evidence *held* to show that a child killed on a railroad track was a trespasser.

17. RAILROADS—TRESPASSERS ON TRACK—CHILDREN—COMPANY'S DUTY. No active duty rests upon a railway company to exercise ordinary care to keep a lookout for children trespassing upon the track.

18. RAILROADS—PERSONS ON TRACK—NEGLIGENCE. Where a railway company owes no duty to keep a lookout for one on the track, it is not negligent not to do so.

19. EVIDENCE—EXPERIMENTS—DISTANCE—WEIGHT. In an action against a railway company for death of a trespassing infant on the track, not at a crossing, experiments by witnesses in determining how far away an object on the track could be distinguished are of little, if any, probative force on the question whether the engineer saw the child sooner than he testified he did, since he must have had the crossing which he was approaching specially in mind, while the witnesses had the objects used in the experiments specially in mind.

20. TRIAL—QUESTIONS FOR JURY. Generally, where the only issue is whether one saw an object, the question is one for the jury, but in every case there must be some sufficient evidence directly tending to establish the fact to be found, or some facts from which the ultimate fact may be reasonably inferred.

21. RAILROADS—TRESPASSERS—COMPANY'S DUTY. A railroad company owes no duty to a trespasser other than to refrain from inflicting willful or wanton injury after actually discovering his peril; the duty not arising when the peril might have been discovered, unless the engineer was wantonly negligent in failing to discover it.

22. RAILROADS—TRESPASSERS—ACTION FOR DEATH—EVIDENCE—SUFFICIENCY. Evidence, in an action against a railway company for

2 Brown v. Salt Lake City, 33 Utah 222, 93 Pac. 570, 14 L. R. A. (N. S.) 619.

the death of a trespassing child, *held* to show that the engineer did not discover the child in time to avert the collision, and that he was not wantonly negligent.

23. RAILROADS—PERSONS ON TRACK—COMPANY'S DUTY. A railroad company must use ordinary care not to injure persons on or near tracks in thickly settled parts of cities, towns and villages, where persons have free access to the tracks, and at all other places where the public in considerable numbers habitually have passed over or along the track for considerable time so as to impart notice of their use of the track to the company, or where the company expressly or impliedly permits such passage.

STRAUP, J., dissenting in part.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by S. J. Palmer against the Oregon Short Line Railroad Company. From a judgment for plaintiff, defendant appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

*P. L. Williams, Geo. H. Smith,* and *Jno. G. Willis* for appellant.

*Powers & Marioneaux* for respondent.

FRICK, J.

Respondent brought this action against appellant to recover damages caused by the alleged negligence of appellant in running a train of cars over and killing respondent's child, of about two years of age, which was on the railroad track near a country road crossing.

The facts developed at the trial are substantially as follows: The respondent at the time of the accident lived in Bannock county, Idaho, on a small farm or ranch about 1 mile east of a siding on appellant's line of railroad, known as Topaz. Respondent's house was about 235 feet south of appellant's track. The country is described as somewhat rough on both sides of the track, and was sparsely settled, there being about ten or eleven families living within a radius of about one and one-half miles from respondent's house, the nearest neighbor being about one-half mile dis-

tant. The evidence tends to show that at the time of the accident, including adults and children, there were living in the territory aforesaid about forty people. Northeasterly from respondent's home, and about three or four hundred feet therefrom, there was a road crossing over the railroad track, put there for the convenience of the people aforesaid and perhaps some others living at a greater distance. Until November, 1903, this crossing was closed in by gates put in the fence on either side of the railroad, but at that time, at the request of those living in the vicinity, it was made an open crossing by the appellant. Topaz was a mere siding on appellant's line of railroad where there was no station house or other buildings, and was a place at which one passenger train going each way, would stop daily, provided it was flagged, to take on passengers. It would also stop to discharge passengers who desired to get off there. The train which caused the accident was a fast passenger train, and did not stop at Topaz, on flag or otherwise. The people living in the vicinity would at times walk on the railroad track in going to or coming from Topaz siding. This, as one of the witnesses for respondent put it, was because the track afforded better walking than the wagon road alongside of the track, and some one would walk on the track in that way "about once or twice a week." The wagon crossing was used by the people to drive over, to drive their cattle and sheep across the track, and two of respondent's neighbors who lived on the north side of the track would occasionally pass over the crossing to go to the post office, which was several miles distant from respondent's house and in a southeasterly direction therefrom. At this post office there was also a store, where respondent and his family and neighbors obtained their ordinary supplies. All but the two living on the north side of the track could go to the post office without crossing the track. For about thirty days immediately preceding the accident, some of the children of one of the neighbors of respondent herded a small number of sheep on the north side of the track and in the vicinity of the crossing, and, in doing so, would sometimes go onto the

right of way because it was drier. The right of way was fenced in by a four-wire post fence on both sides of the track, but some children during the thirty days aforesaid would sometimes go inside the right of way fences. The engineer, who was called as a witness in behalf of respondent, however, testified that he never saw any children on the right of way, never saw them herd any sheep, but that once or twice he did see some children placing some clothes on a fence which was near the crossing. The roadmaster of appellant also testified that he passed over the track frequently, but never saw any children on or near the track. The section foreman, who, for a long time before the accident, passed over the track three or four times a week, also testified that he saw respondent's children only once about four days before the accident walking on the track. There was other evidence by one or two of respondent's witnesses that the children sometimes played and walked on the track during the thirty days immediately preceding the accident while they were herding sheep as above stated. Otherwise there is no definite time fixed when any one walked on the track, or for what length of time it had continued, if at all, except the general statement that people during some length of time immediately preceding the accident walked on the track for the purposes above stated. On the afternoon of April 18, 1904, at about 1:30 o'clock, respondent's child, in some way not disclosed by the evidence, got on the track immediately north of respondent's house, and about two hundred and forty feet west of the crossing. At about that time the daily fast passenger was due from the west, and was approaching the crossing at the rate of about thirty-five or forty miles an hour. The train was a few minutes late in passing Topaz siding. The engineer gave the signal for the crossing some distance west thereof. He testified that he was looking ahead and saw the track ahead of him. When he was about two hundred yards west of the crossing he noticed some object along the south rail on the track west of the crossing, but did not know what it was. He says: "I had an idea that it was old clothes or some weeds blown

on the track or up alongside of the track. It was above the gravel or ballast on the track." He further said that he did not recognize it as a living being or a child until it raised its head, at which time the engine was within sixty feet of it, and he then discovered it was a child. He immediately shut off steam and put on the emergency brake, and did all he could to stop the train, but could not stop it, and the pilot of the engine struck the child and knocked it off the track and killed it. When the train came to a full stop the rear end of the last car had passed two hundred and seventy-five or three hundred feet beyond the point where the child was struck, or to a point just east of the crossing. The day was clear and bright, and the track was practically straight for some distance west of the crossing, there being what is called a two-degree curve to the right in going east. The accident occurred in a cut of from two to four feet in depth. The track was ballasted with gravel of brownish color, which was even with the top of the ties. For some distance to the west and at the point of the accident the train was moving on an upgrade of .72 of one per cent. The child was dressed in what is called a "faded gingham gown," which, respondent said, was drab in color. There were no other persons near the child, nor any animals of any kind at or near the track or crossing at the time of the accident and as the train was approaching the crossing from the west. Respondent and some of his witnesses testified to some experimental tests they made about a year after the accident by placing a child of about the age of the deceased upon the track at the point where the accident occurred, and going to the west along the track to determine how far such a child could be seen and recognized. They testified that they could see that the object on the track was a child at eight hundred feet distant, and could recognize the child at five hundred feet, and could see that there was some object on the track at one thousand three hundred feet from the point of the accident. The child experimented with was dressed in different colored clothes than was the child that was struck, and was placed in a sitting position on the track. The

respondent, however, testified that he tied a string around the clothes the deceased child wore at the time of the accident, and placed the bundle alongside of the south rail where the engineer said he saw the child, and that by going eight hundred feet west he could see the clothes on the track. The evidence with regard to the distance within which a train of five coaches like the one in question, going at the rate of speed it did, could be stopped, is conflicting. The train in question moved about seven hundred and twenty-five feet after the engineer first discovered the object on the track, and about three hundred and fifty or four hundred feet after he discovered it was a child before it was stopped, and he says it could not have been stopped in any shorter distance; while another witness, who, at one time, was a locomotive engineer, testified that such train, under the circumstances disclosed by the evidence, could have been stopped in about the distance of one hundred yards.

The court overruled a motion for nonsuit, and refused to direct a verdict for appellant, but submitted the case to the jury. Upon a verdict in favor of respondent judgment was duly entered, from which this appeal is prosecuted.

The theory upon which the trial court submitted the case to the jury is shown by instruction numbered 11, which is as follows: "The court instructs you that it is the duty of the defendant company, through its proper employees, to exercise ordinary care and diligence to prevent injury to a child of tender years who they know, or, by the exercise of reasonable and ordinary care, should know, is in a situation of danger on its track, even though that child may be a trespasser; and failure on the part of the railroad to use that degree of care in discovering the presence of a child of tender years upon its track, and preventing injury to the same, would be negligence upon the part of the railroad company. In determining this case, whether or not the defendant used that degree of care, you should take into consideration all the circumstances as they are disclosed by the evidence, and the probability or improbability of a child trespassing at the time of the injury. The court further charges you that, as

against a trespasser old enough to realize the danger attendant upon trespassing upon a railroad track, the railroad company owes no duty of keeping any lookout to discover such a trespasser upon its private right of way, and this you may take into consideration in determining what would be reasonable and ordinary care on the part of an engineer in watching for trespassing children upon the track." The appellant excepted to this instruction, and especially to the first sentence thereof, and now assigns the giving of it as error.

The theory of the court, and upon which the case was tried, is perhaps best stated in his own language in a ruling made by him during the trial, as appears from the bill of exceptions, where he said: "The duty of the railroad company and the engineer to keep a lookout was only for helpless children—children of tender years." The instruction complained of fairly reflects this theory. As appears from the latter part of the instruction, the trial court recognized the fact that the deceased child was a trespasser. He assumed, however, that, in view of the fact that the child was but two years of age and therefore without judgment or discretion—practically helpless—there was a duty cast upon the appellant to exercise greater vigilance to discover the child on the track than would have been required of it in case of an adult or one old enough to exercise judgment and discretion for his own safety. Is this the law?

Leaving out of consideration for the moment the question of contributory negligence and the duty devolving upon the operators of trains, in case a child or helpless human being is actually seen upon the track, the law with regard to vigilance to discover mere trespassers logically must be the same whether the trespasser be a child or an adult. This, we think, is held to be so by the great weight of authority. In 23 Am. & Eng. Enc. Law (2d Ed.), at page 736, the rule is tersely stated in the following language: "The fact that a person is an infant does not affect the relation of trespasser, but is material upon the question of his negligence in being

upon the track, and imposes upon the company a higher degree of care to avoid injuring him."

How and when does this higher degree of care arise? In case of an adult, or one of age having judgment and discretion, who is a trespasser and is seen standing or walking on the track, the train operator in the first instance would have to do no more than give such a trespasser warning. When this has been done, the operator may assume that the trespasser will leave the track. Not so with a child of tender years. When such a child is discovered on the track, the train operator may not assume that it will leave the track, but he must at once act upon the assumption that the child will remain, and, to prevent injury, he must slow down or stop the train before reaching the child, if this can be done without serious danger to the passengers on the train.

The rule is likewise stated in 3 Elliott on Railroads, section 1260, p. 619, where the author says: "So it has been held in many cases that the railroad company is not obliged to keep a lookout for trespassing children upon its track, in ordinary circumstances, or move its cars with reference to them until their presence in danger is discovered."

The particular circumstances under which a lookout may be required we will refer to later.

*Railway Co. v. Williams,* 69 Miss. 631, 12 South, 957, in some of its features, closely resembles the case at bar. In speaking of the duty of railway companies with respect to trespassers upon the track, the court, at page 640 of 69 Miss., at page 957 of 12 South., states the rule in the following language:

"The action of the court below, on the instructions for the respective parties, constrained the jury to hold the defendant company liable for a failure of the engineer to check or stop his train when he first saw an object, which he then thought to be something other than a human being, but which, at length, was discovered to be a child. The test of responsibility is, did the striking of the child by the train occur after the engineer had seen— not might or ought to have seen—that is, discerned, or distinguished the girl? Until the girl had been seen—discerned to be a human being—the engineer was under no obligation to the trespasser to check or stop his train, whatever may have been his obligation to

the passengers who were being hauled by him. When the engineer is made aware of the presence and peril of the trespasser by seeing him, he will willfully or wantonly do him hurt at the peril of his employer; but, until made aware of the presence and peril of the trespasser, there can be no willful negligence or wanton misconduct toward the unrecognized, undiscerned trespasser."

In the case of *Felton v. Aubrey,* 74 Fed. 350, 20 C. C. A. 436, the rule is stated in the syllabus as follows:

"A railway company owes no higher duty to an infant trespasser upon its tracks than. to an adult, and is not liable for injuries suffered by such a trespasser, unless, after the discovery of his presence on the track, it has failed to use ordinary care to avoid injuring him."

The opinion is written by Mr. Justice Lurton, United States Circuit Judge, and thoroughly sustains the rule stated in the above quotation. In the course of the opinion, at page 356 of 74 Fed., at page 441 of 20 C. C. A., it is further said:

"The law imposes no duty in respect to trespassers upon its (the railroad company's) track, 'excepting that general duty which any one owes to any other person to do him no intentional wrong or injury. Its (the railroad company's) liability to discharge this duty could only arise when it becomes aware of the danger in which he stood.' The overwhelming weight of authority is in accord with this rule."

We shall have occasion to refer to this case again on another point.

In the case of *Thomas v. C. M. & St. P. Ry. Co.,* 93 Iowa 248, 61 N. W. 967, the rule is stated in the syllabus as follows: "A railroad company need not look out for trespassers. It owes him no duty except to avoid injuring him after he is actually seen. These rules apply to children incapable of contributory negligence." In that case the rule and reasons upon which it rests are thoroughly discussed, and the court clearly points out that some of the courts have departed from the rule by reason that they have confounded the duty owing to infant trespassers with the question of their contributory negligence.

In *Nolan v. N. Y., N. H. & H. Ry. Co.,* 53 Conn., in speaking of the duty owing to trespassers on the track, the court, at page 474 (4 Atl., at page 110), states the rule as follows:

"We do not think that the tender age of one of these plaintiffs could have the effect to raise a duty where none otherwise existed. The supposed duties have regard to the public at large, and cannot well exist as to one portion of the public and not to another under the same circumstances. In this respect, children, women, and men are upon the same footing. In cases where certain duties exist, infants may require greater care than adults, or a different kind of care: the precautionary measures having for their object the protection of the public must, as a rule, have reference to all classes alike."

It is manifest that, while a child may not be chargeable with contributory negligence, he may, nevertheless, be in a situation where he is a trespasser, and not entitled to a greater degree of vigilance to discover his presence than any one else would be. To establish any other rule would simply result in requiring the railroad company to keep a lookout always and everywhere for trespassers, and the presumption of a clear track would be entirely ignored.

The following cases all hold that there is no duty cast upon the railroad company to keep a lookout for trespassers, whether young or old. *Burg v. C., R. I. & P. Ry.,* 90 Iowa 106, 57 N. W. 680, 48 Am. St. Rep. 419; *Masser v. C., R. I. & P. Ry.,* 68 Iowa 602, 27 N. W. 776; *Chrystal v. Troy & B. Ry. Co.,* 105 N. Y. 164, 11 N. E. 380; *Ward v. S. P. Ry. Co.,* 25 Or. 433, 36 Pac. 166, 23 L. R. A. 715; *Toomey v. S. P. Ry. Co.,* 86 Cal. 374, 24 Pac. 1074, 10 L. R. A. 139; *Woodruff v. N. P. Ry.* (C. C.), 47 Fed. 689; *Morrissey v. E. P. Ry.,* 126 Mass. 377, 30 Am. Rep. 686; *Wright v. B. & A. Ry.,* 142 Mass. 296, 7 N. E. 866; *Scheffler v. Minn. & St. L. Ry.,* 32 Minn. 518, 21 N. W. 711; *McDermott v. Ky. C. Ry. Co.,* 93 Ky. 408, 20 S. W. 380; *Ry. Co. v. Williams,* 69 Miss. 631, 12 South. 957; *Williams v. Kas. City S. & M. Ry.,* 96 Mo. 275, 9 S. W. 573; *Givens v. Ky. C. Ry. Co.,* 15 S. W. 1057, 12 Ky. Law Rep. 950; *Thomas v. C., M. & St. P. Ry.,* 93 Iowa 248, 61 N. W. 967; *I. C. Ry. Co. v.*

*O'Connor,* 189 Ill. 559, 59 N. E. 1098; *Ala. G. S. Ry. v. Moore,* 116 Ala. 642, 22 South. 900; *B. & O. Ry. Co. v. Bradford,* 20 Ind. App. 348, 49 N. E. 388, 67 Am. St. Rep. 252; *Hansen v. S. P. Ry.,* 105 Cal. 379, 38 Pac. 957; *C., C., C. & St. L. Ry. v. Tartt,* 64 Fed. 823, 12 C. C. A. 618; *Trudell v. G. T. Ry.,* 126 Mich. 73, 85 N. W. 250, 53 L. R. A. 271; *Nolan v. N. Y., N. H. & H. Ry.,* 53 Conn. 461, 4 Atl. 106.

The foregoing cases all involve trespasses by infants or children ranging in ages from eighteen months to ten or twelve years.

The following cases, while they involve trespassing adults, state the rule as the same is held to be in the foregoing cases: *Baltimore, etc., Ry. Co. v. State,* 62 Md. 479, 50 Am. Rep. 233; *Spicer v. Chesapeake & O. R. Co.,* 34 W. Va. 514, 12 S. E. 553, 11 L. R. A. 385; *Ry. Co. v. Graham,* 95 Ind. 286, 48 Am. Rep. 719; *State v. B. & O. Ry.,* 69 Md. 494, 16 Atl. 210, 9 Am. St. Rep. 436; *Anderson v. C., St. P. & M. Ry.,* 87 Wis. 195, 58 N. W. 79, 23 L. R. A. 203; *I. C. Ry. Co. v. Johnson,* 97 S. W. 745, 30 Ky. Law Rep. 142; *I. C. Ry. v. Eicher,* 202 Ill. 556, 67 N. E. 376; *C., C., C. & St. L. Ry. Co. v. Cline,* 111 Ill. App. 416.

The foregoing cases, whether involving trespassing children or adults, or even licensees, seem to apply the rule strictly whether the trespass was committed in town or country, or in railroad yards, or elsewhere.

The following cases announce what, for want of a better term, may be called an intermediate rule as applicable to trespassers or licensees: *Ala. G. S. Ry. Co. v. Guest,* 144 Ala. 373, 39 South. 654; *So. Pac. Ry. Co. v. Chatman,* 124 Ga. 1026, 53 S. E. 692, 6 L. R. A. (N. S.) 283; *Louisville & N. Ry. Co. v. Daniel* (Ky.), 91 S. W. 691, 3 L. R. A. (N. S.) 1190; *Green v. C. & W. M. Ry. Co.,* 110 Mich. 648, 68 N. W. 988; *Clark v. M. C. Ry. Co.,* 113 Mich. 24, 71 N. W. 327, 67 Am. St. Rep. 442; *Bouwmeester v. G. R. & I. Ry.,* 67 Mich. 87, 34 N. W. 414; *Smalley v. Southern Ry. Co.,* 57 S. C. 243, 35 S. E. 489; *Fearons v. K. C. El. Ry. Co.,* 180 Mo. 208, 79 S. W. 394; *Chesapeake Ry. Co. v. Rogers,*

100 Va. 324, 41 S. E. 732; *I. C. Ry. Co. v. Murphy,* 123 Ky. 787, 97 S. W. 729, 11 L. R. A. (N. S.) 352; *Johnson v. Lake Superior Tr. & T. Co.,* 86 Wis. 64, 56 N. W. 161; *Johnson v. Louisville & N. Ry. Co.,* 122 Ky. 487, 91 S. W. 707; *Davis v. Chicago & N. W. Ry.,* 58 Wis. 646, 17 N. W. 406, 46 Am. Rep. 667; *Cassida v. Ore, Ry. & N. Co.,* 14 Or. 551, 13 Pac. 438; *Felton v. Aubrey,* 74 Fed. 350, 20 C. C. A. 436; *Atchison, T. & S. F. Ry. v. Smith,* 28 Kan. 541; *Givens v. Ky. Cent. Ry. Co.,* 15 S. W. 1057, 12 Ky. Law Rep. 950; *Young v. Clark,* 16 Utah 42, 50 Pac. 832; *Hyde v. U. P. Ry.,* 7 Utah 356, 26 Pac. 979.

In these cases it is held that if the accident occurs at a place where the company has permitted the public the free use of the tracks to pass along or over, and this use is open and continued for a long period of time and by a large or considerable number of people, or where the railroad runs through thickly populated portions of a city, town, or village where people frequently go upon or pass over the tracks for such a length of time that the employees of the railroad company may be charged with notice, or when such notice is directly given them, then in all such cases, although the injured person be a trespasser, still the railroad company, having reason to expect that some one may be on or near the track, must act accordingly, and keep a lookout and give timely warning in order to prevent a collision, and a failure to exercise ordinary care in keeping a lookout and in giving warning may be negligence for which even a trespasser is entitled to recover, provided he is not guilty of contributory negligence which is the proximate cause of the injury. In cases of adults being at such place, the employees of a railroad company are not required to either check the speed of the train or to stop it as soon as they discover the intruder. All that is required of them in the first instance is to give timely warning of the approach of the train. On giving such warning they have the right to assume that the intruder will leave the track. In case of children or infants, however, they may not indulge such a presumption, but must at once arrest the speed of the train as soon as they discover the children, or, by the exercise of ordi-

nary care, ought to have discovered them, on the track or in a place of danger. This also applies to helpless adults who may be on the track or in a place of danger, when their helplessness is discovered, or, by the exercise of ordinary care, ought to be discovered. This rule seems to us to be based upon the dictates of humanity and good common sense. It certainly violates no sound principle of either law or morals, and withal recognizes the fact that while the right of way of a railroad company is private property, with all the rights and incidents of ownership and control, nevertheless it must be used and enjoyed with due regard for the safety of those who, with full knowledge and without objection, are permitted to use the right of way for passage or otherwise. If, therefore, such a use is made of railroad property by the public, it may in time acquire what is termed an implied license to enter upon and pass over such property. To establish such an implied license, however, as Mr. Justice Lurton, in *Felton v. Aubrey,* 74 Fed., at page 360, 20 C. C. A., at page 446, says, it is "essential that the use shall have been definite, long, open, and continuous." This is also the view expressed by the Supreme Court of California in *Hansen v. S. P. Ry.,* 105 Cal. 379, 38 Pac. 957. In fact, the same thought is expressed in different language in nearly all the cases cited above, which are cited under what we have termed the "intermediate rule." It is not necessary, however, that the track must be used so extensively and for such a length of time as to establish a license by implication before a railroad company may be required to keep a reasonable lookout for persons on the track. In this regard much depends upon the place and surrounding conditions and circumstances. It may be that in a populous city, or in smaller towns and villages where persons habitually have recourse to and pass over or along the railroad tracks in considerable numbers and at a particular place or places for a much shorter time than is required to establish a license, the railroad company may still be required to exercise reasonable care for their safety and warn them of the approach of trains, although they are trespassers. But in such cases the use must be such as to apprise the railroad company

through its employees that the track is being used for such purposes and by a considerable number of persons continuously (not occasionally merely), and with some degree of regularity and habitually. In this latter class of cases it is a question of fact for the jury to say whether, under all the circumstances, the company has exercised ordinary care in view of the facts and conditions prevailing. It does not follow, however, that because a few persons once or twice a week walk on the railroad track in a sparsely settled country district it is for the jury to say whether or not the railroad company discharged its legal duty in keeping a lookout for trespassers. It does not follow that because there is an occasional trespass it will be repeated. As to whether there is a duty where the facts are not in dispute, or, if in dispute, whether those most favorable to the trespasser do or do not create a legal duty, is a question of law and not of fact. This is well expressed by Mr. Justice Carpenter in *Nolan v. N. Y., N. H. & H. Ry. Co.,* 53 Conn., at page 471, 4 Atl., at page, 108, where he says:

"It becomes important, therefore, to distinguish between law and fact. So far as the defendant is concerned, negligence may be defined to be a failure to perform some act required by law, or doing the act in an improper manner. The law determines the duty; the evidence shows whether the duty was performed. What duty rested upon the defendant, was a question of law; was the duty properly performed? was a question of fact."

The general rule recognized by all courts, so far as we are aware, when not modified by statute, is that the railroad company, may, outside of cities and towns, assume and act upon the assumption that the track is free and clear, and that trespassers will not put themselves in the way of trains. In other words, the railroad company need not anticipate that any one will commit a trespass at such a place. The mere fact that there are occasional trespassers does not change the rule. It may be that in certain cases, where a long-continued use is claimed by one side and denied by the other, the court must submit the question of user to the jury under proper in-

structions. But where the question is one simply of determining, under all the facts, whether a legal duty is created, the question is one of law. Again, the character of the place where the accident occurred may be in dispute, or the evidence may be conflicting as to the number of people who use the track and the character of the use. In all such cases the question cannot be determined as one of law, because the facts upon which the duty rests are in conflict. And if there is sufficient evidence to create a legal duty, the court must submit the question to the jury to determine whether the duty has been met or not. Under the facts as claimed by the defendant the duty may not have arisen, while under those as claimed by the plaintiff it may have. The court, therefore, must leave it to the jury to say which side shall prevail under proper instructions. Where, however, as in this case, the facts with regard to the use of the track and surrounding conditions are not in dispute, the question as to whether the appellant was required to keep a lookout at the time and place is merely a question of law. In the very extended research we have made into the books for decided cases, we have not been able to find a single case which holds that under circumstances like those in this case the law imposes the duty upon a railroad company to keep a lookout for trespassers, unless such a duty was imposed by statute, as in Tennessee, or in those states where it is held that a railroad track is practically a highway, on which the railroad company in passing over it with its trains is bound at all times and places to keep a lookout for trespassers as well as for all others, and to use ordinary care not to injure any one. To these latter cases we will now briefly refer.

The cases that hold that a lookout is required at all times and places, so far as we have been able to find them, are the following: *Chicago, B. & Q. R. Co. v. Grablin,* 38 Neb. 90, 56 N. W. 796, 57 N. W. 522; *Troy v. Ry. Co.,* 99 N. C. 298, 6 S. E. 77, 6 Am. St. Rep. 521; *Clark v. R. Co.,* 109 N. C. 430, 14 S. E. 43, 14 L. R. A. 749; *Smith v. Norfolk & S. Ry. Co.,* 114 N. C. 729, 19 S. E. 863, 923, 25 L. R. A., 287; *Bottoms v. Seaboard Ry. Co.,* 114 N. C. 699, 19 S. E. 730,

25 L. R. A. 784, 41 Am. St. Rep. 799; *Ry. Co. v. Hewitt,* 67 Tex. 473, 3 S. W. 705, 60 Am. Rep. 32; *H. & T. C. Ry. Co. v. Sympkins,* 54 Tex. 615, 38 Am. Rep. 632; *Rd. Co. v. Humphreys,* 80 Tenn., 200; *Rd. Co. v. White,* 73 Tenn. 540.

There are some other cases cited by respondent as holding this rule namely, *Keyser v. Chicago & G. T. Ry.,* 56 Mich. 559, 23 N. W. 311, 56 Am. Rep. 405, and *Meeks v. S. P. Ry. Co.,* 56 Cal. 513, 38 Am. Rep. 67. But, as we have already shown by the citations, the courts from which these cases emanate do not countenance such a rule as will appear by reference to the later decisions of those courts. The case in 56 Mich. 559, 23 N. W. 311, 56 Am. Rep. 405, however, is clearly distinguishable from the case at bar. In that case, from the engineer's own testimony it was apparent that he could have stopped the train long before he struck the child, if he had made any reasonable effort to do so after discovering and recognizing the child on the track. It was, therefore, a case of gross negligence. The following cases are also sometimes cited by courts as recognizing this doctrine: *Guenther v. St. L. & Iron M. Ry.,* 108 Mo. 18, 18 S. W. 846; *Lynch v. St. Joe & I. Ry. Co.,* 111 Mo. 601, 19 S. W. 1114; *Felch v. Concord Ry. Co.,* 66 N. H. 318, 29 Atl. 557.

It will be found, however, that these latter cases accept the doctrine announced in what we have termed the "intermediate rule." The rule in Tennessee is founded upon a positive statute which requires a lookout to be kept by the railroad company at all places, and where an object is seen upon the track to at once give the required signals and slow up or stop the train. Under this statute it has been held that the duty to keep a lookout is constant, and a failure to give the statutory signals by reason that a proper lookout was not kept constitutes negligence *per se,* of which a mere licensee, or even a trespasser, may avail himself in an action for negligence against the railroad company. Mr. Justice Lurton, who, before his appointment to the federal bench, was a justice of the Supreme Court of Tennessee, however, points out in the case of *Felton v. Aubrey* that such is not the rule in the absence of a statute. This leaves the Nebraska, the North Caro-

lina, and Texas courts as holding to the particular doctrine that a lookout must be kept at all times and places and in favor of all. The cases cited by the Nebraska court in support of this doctrine will be found not to support it at all.

But is this doctrine sound? Upon what principle of law or justice is it founded? It is said that it is the duty of the railroad company at all times and places to keep a lookout for obstructions on the track, or for any interference therewith, for the safety of their passengers; that the company owes a duty to them, at least. Further, that railroad trains are dangerous instrumentalities, which at all times and places should be operated with reasonable care. All this may be conceded, and yet a trespasser may not be entitled to complain for an injury inflicted upon him. In the first place, the passenger stands in a special relation to the company; he is on its train by special invitation, and under a special contract which imposes the duty upon the company to carry him safely. This duty is constant and may not be relaxed. Supposing a tramp were stealing a ride on a train which came into collision with another train, or with any other obstruction on the track, or by reason of a defective roadbed an accident occurs, could the tramp recover damages against the company because it had not discharged its duty to the passengers on the train on which the tramp rode when he was injured? If he may recover while trespassing on the track of the company for a failure to keep a lookout in the interest of the passenger, why may he not likewise recover as a trespasser on a train for like failure to perform a like duty to the passenger? Are not mutual rights, duties, and obligations always measured by the relationship of the parties? Isn't the right of way of the company private property and governed by the laws relating to private ownership, except that it is dedicated to public use for transportation purposes? Any person, therefore, who may desire to avail himself of the facilities provided by the company for transportation may do so, and for that purpose may at all proper times and places claim access to its property devoted to that purpose as a matter of right, and in exercising such right he has a right to demand the

exercise of reasonable care by the railroad company for his protection. May he, however, also go onto its right of way at any time and place for his own pleasure or convenience and claim such protection as a matter of right? Clearly not. If he does so, however, what duty does the company owe him? Clearly the same duty that any other owner of property would owe him under the same circumstances. How may a trespasser be permitted to avail himself of the rights belonging to another who stands in a different relation to the person against whom the right is asserted, without doing violence to every principle of law upon which reciprocal rights, duties, and obligations are based? The right, therefore, of a trespasser to complain because certain duties were not discharged which were due others standing in a different relation than he stood must be based upon different principles than those considered above. This in part at least, is attempted by the statement that the operation of trains is very hazardous, and that, in the interest of humanity, and because of the sacredness of human life, the duty to keep a lookout for all should be required. Conceding all this to be true, upon what principle of reason and justice should it be held that railway companies be made to assume the whole burden of preserving life and limb? The very courts that advance this doctrine violate it in the application by permitting contributory negligence to prevent a recovery. This contributory negligence, in case an infant is killed, may be invoked against the parent suing in his own right, and, as against an adult or one having attained to years of discretion, it is always available. If the right of recovery by a trespasser is to prevail upon the latter grounds, it should be made available to all and under all circumstances. If the purpose is humane and to preserve human life, it is quite as humane and preserves human life just the same whether the life of one guilty of contributory negligence is preserved, or of one not so guilty. It seems to us, however, that the rule that prevents trespassers and those guilty of contributory negligence to recover is based upon sound reason and correct principles, and in the long run will tend to make all more careful and cautions in going into

places of constant danger. It seems to us fallacious to assume that railroad companies will increase the vigilance they owe to their passengers and to the public generally because there is an occasional trespasser found on the track in outlying country districts who is injured. To avoid injury to such trespassers, nothing short of patrolling the whole line of railroad would suffice. Whether such measures are necessary and should be resorted to is a legislative, not judicial, question. This, no doubt, is conceded by all, yet by careless statements some courts apparently have enforced such a rule by indirect or judicial, rather than by proper, legislation. We can see no good reason why a trespasser should be given greater rights when he complains of a railroad company than he receives as against all other owners of property under similar circumstances.

The trial court in this case, by its instructions, recognized the doctrine that a railroad company owes no duty to an adult trespasser upon its track until such trespasser is discovered, but an exception was made by the court with regard to infant trespassers. The overwhelming weight of authority, as we have shown, recognizes no such distinction; and, in the absence of a statute, such a distinction finds no support either in reason or upon sound principles of justice and right. With respect to infant trespassers, there is a well-established exception in what is termed the "Turntable Cases." This exception is, however, as we conceive, based upon sound reason and good logic, and we have attempted to define and apply it in the case of *Brown v. Salt Lake City*, 33 Utah 222, 93 Pac. 570, 14 L. R. A. (N. S.) 619. This exception, however, cannot be universally applied in favor of infant trespassers. Unless the conditions upon which the exception rests prevail, the exception cannot be applied. A railroad track in an open country neither attracts nor allures children. Moreover, railroad trains must be operated at considerable speed in order to meet the public demands. If such trains cannot be operated in the country districts at great speed and without having the trains constantly under the control of the operators, they cannot be so operated anywhere. If the operators of trains

may not rely upon the presumption of a clear track in the open country, they may not do so anywhere. Under all the evidence in this case, when most strongly taken in favor of respondent, there is nothing which takes the case out of the rule of a trespasser pure and simple. There is no evidence that either the child or any one else had a legal right or license to go upon the track at the point of the accident, nor is there any evidence from which an inference can reasonably be drawn that there was an implied right to do so. If, therefore, the child had entered upon and had been injured on real property owned by an individual, or any number of them, under circumstances disclosing no better right to be there than is shown in this case, no one, we think, would doubt that the act of being on the premises constituted a trespass, and as to whether it was or not was a question of law and not of fact. It being a trespass, no active duty devolved upon the appellant to exercise ordinary care to keep a lookout for the trespassing child. It was error to instruct the jury that such a duty was imposed as a matter of law, and it was also error to submit the case to the jury at all upon the theory as to whether the appellant exercised ordinary care to prevent injury to the child.

But it is asserted by respondent's counsel that the engineer says that he looked ahead of the engine and saw the track, and that he actually discovered an object on the track when the engine was still one hundred and twenty-five yards distant from such object; that there is evidence in the record that the train could have been stopped within a distance of one hundred yards. From this it is argued that the engineer, after discovering the object on the track, could have stopped the train before striking the child, and not having done so constituted negligence. It is true that the engineer, who was a witness testifying on behalf of respondent, in substance said that he looked down the track ahead of the engine for a considerable distance west of and on approaching the crossing; that he saw no person, cattle, sheep, or other animate objects at or near the crossing, but that in approaching it he did see an object on the track when he was about two hundred yards

west of the crossing, which object was about one hundred and twenty-five yards from the engine, lying near the south rail, when he first discovered it; that he took this object to be some weeds or clothing blown up by the wind on the track, and that the object he saw was lying prone upon the track, and he discovered it was a living child when it raised its head when the engine was about sixty feet from where it lay. There is no other evidence in the record upon these subjects, except that the engineer says that the train was stopped in as short a distance as it was possible to do this. In view of the testimony of the experiments that were testified to by respondent and some of his witnesses, and in the light of the foregoing statement of the engineer on the train and of the expert witnesses, two questions arise: (1) Was there any evidence from which the jury was authorized to find that the engineer was guilty of such conduct as to make appellant liable in not preventing the accident? and, (2) If there is any such evidence, did the court err in instructing the jury with respect to the duty imposed on appellant in case of a trespassing child by telling them that it was the duty of appellant to exercise ordinary care to discover whether a child was upon its track, although such child be a trespasser, in view of the circumstances and the place where the accident occurred as disclosed by the evidence? With regard to the first, respondent's counsel contends that the engineer admits that he looked ahead of the advancing engine along the track; that he saw an object on the track when he was still one hundred and twenty-five yards away from it; and, further, that the evidence with respect to the experiments shows that the child could have been seen at a much greater distance by any one who looked, and as the engineer did look he must have discovered the child before he says he did, and that whether he did or not is a question of fact for the jury. The fallacy of counsel's contention, it seems to us, is that it assumes that what the engineer might have seen he ought to have seen, and therefore in contemplation of law did see. These deductions would be correct when applied to cases where a duty to look and see is imposed. But where no such duty is imposed by law, as we have attempted

to demonstrate from the authorities, a different rule of law applies. Where no duty is imposed to keep a lookout, then it must logically follow that it is not negligence not to do so. *Ry. Co. v. Williams,* 69 Miss. 631, 12 South. 957, and cases there cited. The duty to prevent injury arises only after the trespasser is actually discovered in a place of danger, and not from the time he, by the exercise of ordinary care, might or ought to have been discovered. Upon this point, all the authorities which hold to the rule we are invoking in this case are practically unanimous. Not to see where there is no primary duty to look is not negligence, and this is so whether the trespasser is an adult or a child. The Supreme Court of Iowa, in discussing this question in the case of *Thomas v. C., M. & St. P. Ry.,* 93 Iowa, at page 255, 61 N. W., at page 969 *et seq.,* says:

"Now, as we have already seen, the only duty the engineer of a train owes to a trespasser is to avoid injuring him after his peril is discovered. And, in determining this question of duty, it is entirely immaterial whether the trespasser is *sui juris* or not, for the inquiry is not as to the ability and capacity of the trespasser, but rather the duty of the one who is charged with the negligent acts. For this reason the better-considered cases hold that it is entirely immaterial that the trespasser is an infant, idiot, or lunatic in determining whether he was a trespasser. (Citing cases.) When the duty once commences, no doubt a higher degree of care is required to avoid injuring a child than is required where the trespasser is an adult. But active duty commences no sooner in one case than in the other. The reason why one who by his negligence contributes to his injury cannot recover is entirely different. . . . With these distinctions in mind, most of the cases cited can be reconciled, and from them the rule deduced that a railroad company owes no duty to a trespasser, be he *sui juris* or not, until its employees actually discover him upon the track, and that the question as to the age of the child is not important in determining when the duty commences."

The court then proceeds to discuss the exception in favor of infants, namely, the Turntable Cases, and continues further:

"In the sixth instruction the-jury were told that defendant's employees were not required to be upon the constant lookout to discover children at that place—the place of the accident. . . .

While it does not directly say that the engineer was required to keep a lookout for trespassers, yet such meaning could well be placed upon the language used. The inference is quite strong that, while he was not required to keep a constant lookout, yet some effort in this direction was required. The case was presented to the jury on the theory that the child was a trespasser, pure and simple, and, as we have seen, the defendant did not owe it the duty to look out for it."

In *Smalley v. Ry. Co.*, 57 S. C., at page 255, 35 S. E., at page 492, the Supreme Court of South Carolina quotes and adopts the following language:

"Properly speaking, there is no positive duty owing from a railroad company to a trespasser on its track; it is not a part of its duty in exercising ordinary care in the operation of its road, to provide against the possibility that trespassers may be on its track, and the extent of its duty is to refrain from willful or deliberate injury. Except at crossings, it has the right to the exclusive use of its track and premises, and is entitled to assume that they are clear. It is not bound to anticipate that persons will be upon them or to make provision for the safety of such persons."

Of course, the rights and duties outlined in the foregoing statement should be limited strictly to places in the open country, and where the public or any considerable number of persons have not habitually resorted to the track with the express or implied permission of the company. In view of the whole evidence upon the question now under consideration, can reasonable men say that the engineer in fact did see the object on the track and know it was a child or living being sooner than he says he did? It is urged that he says he looked, and from this it is argued that when others looked they saw, and discerned it was a child at a much greater distance, and hence he must have done the same. We repeat, the question is not what he might or ought to have seen, but it is, did he in fact see, and was the object upon the track which he was approaching, so prominent and in such a position that when he looked in the direction in which the child was he must have seen it and that from these facts it is obvious that he is not stating the truth when he says he did not see and discern its character sooner? If we may assume that the engineer told the truth when he said he did not seen the object on the track

until he was within one hundred and twenty-five yards of it, and that he did not discover that it was a child or living being until he was within sixty feet of it, then under all the evidence the engineer, after he discovered the object was a child, could not have stopped the train in time to save it from injury.

It is, however, insisted that, in view of what the witnesses saw when they made the experiments, the jury had a right to disbelieve the engineer and assume that he saw the child in ample time to have stopped the train. This assumption is, however, based upon the fact that the engineer must have seen what others say they saw. Does this necessarily follow? The engineer was approaching a crossing in the open country. In looking forward down the track, as he says, he was looking to see whether or not there were any objects at or near the track. Quite true, in doing this he also scanned the track ahead of the approaching engine; but it is obvious that he had the track less in mind than he did the crossing and the approaches thereto. His special duty was to observe the crossing. It is easy, therefore, to understand why one may look down a track and not see or observe every object that may be between the observer and the point the observer has specially in mind, and this is especially apparent where the intermediate object is small, like a two or three year old child lying prone upon the track. From this it is also easily understood why the experiments made by the respondent and his witnesses are of little, if any, probative force. In this connection appellant contends that those experiments were improperly admitted in evidence, because they were not made under substantially the same conditions in which the engineer was placed at the time. It is quite true that the experiments were not made under the same conditions in which the engineer was placed, and it would perhaps be impossible to make such experiments under precisely the same conditions. It seems to us, however, that the results of the experiments amounted to no more than both court and jury had a right to consider without any evidence upon the subject. The conditions and surrounding circumstances were all in evidence, and it therefore was a matter

of common knowledge merely how far an object such as the child presented could be seen in broad daylight. The fact that the object was seen by others who temporarily placed that object upon the track at another time and when they expected to see it gives but little, if any, aid in determining whether one who is approaching a similar object on a fast-moving train, and who does not have the object in mind and upon whom no duty is imposed to see, also saw it. Here, again, it is a matter of common knowledge, if not universal experience, that all of us frequently look in a certain direction, and do not see every object within our range of vision. If a duty is cast upon one to look, then in contemplation of law he also sees, whether in fact he does so or not. What one ought to see, he as a matter of law, does see. But this is not the case where there is no duty to look. In such a case one cannot be charged with negligence until he does see and fails to act. It is only from the moment that he sees that the duty commences. Quite true, the question as to whether one did actually see or not cannot, in all cases, be left to the bare statement of the observer. The object may be so prominent, and its position so conspicuous, that it may be obvious to all, and that where one says he looked the inference is unavoidable that he likewise saw the object in question. But before one can be charged with negligence under circumstances where there was no primary duty to look or see, negligence in failing to see must be gross, and so as to amount to willfulness, wantonness, or recklessness. This necessarily follows from the want of duty to look and see.

Applying the undisputed facts established by the evidence to the foregoing statement of the law, is there anything from which a jury may infer that the engineer actually saw the object upon the track and discerned it to be a child in time to avert the collision? It is argued that, as to whether the engineer saw the child or not is a question of fact to be submitted to and passed on by the jury. As an abstract proposition, where the only issue is whether a person saw or did not see an object, the question is one of fact and ordinarily must be submitted to the jury. But in every case there must

be some sufficient evidence which directly tends to establish the fact to be found, or some facts from which the ultimate fact may reasonably be inferred. If there is no such evidence, either direct or circumstantial, then there is nothing to submit to the jury, for the reason that the whole matter is left to mere conjecture. It is argued, however, that in this case the engineer testified that he looked along the track ahead of the advancing engine and saw the crossing, which was some distance beyond where the child was lying upon the track. It is further argued that some of respondent's witnesses testified that they made some experiments by placing other children upon the track at or near the point where respondent's child was lying, and that such witnesses could see the child they had placed upon the track for a much longer distance than the engineer testified that he saw the deceased child. From this it is urged that, in view that those witnesses could see and did see a child on the track for a much longer distance, therefore there is some evidence from which a jury would be authorized to infer that the engineer also saw the deceased child. If the controlling question were as to whether the engineer could have seen the child, then this evidence would be quite material, if not convincing. But the issue is not whether the engineer could see the object, but whether he actually did see it and discerned it to be a child in time to stop his train and avoid the accident. If the law had imposed upon him the duty to look, then the evidence that others could see a child upon the track for a longer distance than the engineer says he saw it would perhaps be sufficient to authorize an inference that the engineer likewise could have seen if he looked, or saw because he did look. Under such circumstances, however, the ability to see was, in the eye of the law, tantamount to seeing. The negligence, in such event, would consist in not seeing what ought to have been seen, and the fact whether he saw or not, would not be controlling—in fact, not even essential. But we have no such issue here. In this case there was no duty to look, and hence it was not negligence not to see. The mere fact that others could see a child sitting upon the track where they expected to see one is wholly in-

sufficient to establish the fact that the engineer actually saw and discerned another child which was lying prone upon the track along by the side of the rail. The fact to be established was, did the engineer see the object upon the track, and discern that it was a child in time to avert the collision? The engineer, whose testimony is the only direct evidence upon the subject, says he did not discover the object until he was about one hundred and twenty-five yards from it, and did not discern its character until he was within sixty feet from where it was lying on the track. The questions, therefore, are: (1) Whether, under the circumstances, the testimony of respondent and his witnesses to the effect that they could see a child of about the same size in a sitting position on the track for a much longer distance presents a substantial conflict in the evidence upon this subject; and (2) is it permissible to draw the inference from the facts testified to by those witnesses that the engineer not only saw an object upon the track, but discerned it to be a child in time to stop his train before injuring it? If it may be inferred that because some persons could see and discern the character of an object, therefore another, at a different time under similar circumstances, actually saw the object and discerned its character, then there is some evidence to support the inference. It no doubt might be inferred that if one could see the object, another under similar circumstances might likewise see it, but this is far from proving (and an inference must amount to proof) that the other did actually see and discern the character of the object. To permit the ultimate fact to be established in this way is to permit it to be done by speculation and conjecture, which the law does not authorize. True it is that there may be cases where an object on the track may be so prominent that not to see it would amount to gross or willful misconduct upon the part of the engineer. In case of a trespasser, to whom no duty is owing except not to inflict willful or wanton injury, after he is discovered, the circumstances from which such wanton and willful conduct may be inferred must be made to appear before it can be said that there is any evidence upon which a recovery may be had. Is there even a

scintilla of evidence in this case from which any reasonable men might infer recklessness or wantonness upon the part of the engineer? We confess we are unable to discover any such. If this be so, what was there to submit to the jury? Moreover, in what respect would this evidence raise a conflict with the positive statement of the engineer? If a jury is permitted to infer, under the undisputed facts in this case, that the engineer actually saw the object upon the track and discerned it to be a child in time to stop his train and prevent a collision, then we must say that a jury may say in any case of injury to a trespasser, however meager the evidence may be, that the engineer's conduct was willful and wanton in not actually seeing and discerning the character of the object upon the track in time to avert the injury. To so hold would entirely eliminate the presumption of a clear track, and would impose a duty upon the engineer to see if it was made to appear that he looked, and because he looked he also saw the object and discerned its character. The overwhelming weight of authority as to trespassers is that the duty to exercise care arises only from the time the trespasser is actually discovered and his character and helpless or perilous position is recognized, and not from the time that he might have been seen. This rule applies to all trespassers, whether they be infants or adults, helpless or otherwise. A different degree of care as to infants and helpless beings arises only from the time of the actual discovery of their condition and character, and not before. Before discovery, the rule is the same with regard to all trespassers, young or old. After an infant or helpless person known to be such is actually discovered in a place of danger, then, and then only, the rule with regard to the degree of care to be exercised in his behalf changes, as we have already pointed out. From this it follows that there is no duty to see and discover an infant any more than there is one to see and discover an adult trespasser. To hold, therefore, that a jury may infer that because one looked along the track he therefore actually saw an object as small as a two year old child would be when lying prone upon the track against the rail, and also discerned its character, where the presumption

of law is that the track is clear simply because others say they could and did see a similar object under similar circumstances, is tantamount to saying that the rule should be enforced that where one looked he also must be held to have seen. This, in fact, would amount to enforcing the Nebraska, North Carolina, and Texas rule, which we have repudiated because it is against the overwhelming weight of authority and is contrary to good reason and sound principles. To permit the jury under the present state of the record to infer that the engineer actually saw the object and discerned its character in time to stop the train is to reverse the rule with regard to trespassers, and enforce it precisely the same as though the duty was imposed upon the engineer to keep a lookout for intruders upon the track.

For an intelligent discussion and approval of the propositions we have discussed above, and that no active duty is owing to a trespasser until his peril is discovered, and for a review of the more recent cases upon this point, we refer to the recent case of *Southern Pac. Ry. Co. v. Chatman,* 124 Ga. 1026, 53 S. E. 692, 6 L. R. A. (N. S.) 283, also reported and annotated in 4 A. & E. Ann. Cas. 675. In the foregoing case the question as to whether the boy was a trespasser or not was not clear, but, notwithstanding this, the court held that an instruction which imposed the duty upon the company, as the trial court imposed it in this case, constituted error. It is asserted, however, that *Hyde v. U. P. Ry. Co.,* 7 Utah 356, 26 Pac. 979, is decisive of this case. We cannot agree with this contention. The facts in that case bring it clearly within what we have termed the intermediate rule, as is manifest from the instruction which was given in that case and which the territorial Supreme Court approved. The instruction, so far as material here, reads as follows:

"If they (the trainmen) saw an object and from the proximity of settlements, and the places where there were children, they ought, in the exercise of good judgment and sound discretion, to have known it was probably a human being; or, if approaching railroad crossings where there were houses and people residing, close by, they failed to keep such a lookout as they ought to have kept, and that they ought to have seen that child, and run upon it—then the plaintiff would have a right to recover in this case."

It is manifest that the case was tried and submitted upon the theory that it was the duty of the railroad company to keep a lookout, and that in failing to do this it was negligent. It is also apparent that the court, in instructing the jury, applied the law to a state of facts under which the children or the people generally exercised the right to go upon the railroad track and the place where the collision occurred, and that they, or some of them, might reasonably be expected to be on or near the track. This, therefore, takes that case out of the class of cases where a trespasser seeks a recovery. It is of little consequence what the territorial Supreme Court may have said in the opinion. The law of the case was ruled by the court's instruction, and it was this instruction that the Supreme Court held to be good law, and not something else.

The case of *Young v. Clark,* 16 Utah 42, 50 Pac. 832, already referred to, was a similar case, both as regards the facts and the law applicable thereto, as appears from the opinion in that case by the Supreme Court of this State.

With regard to the case of *Keyser v. C. & G. T. Ry.,* 56 Mich. 559, 23 N. W. 311, 56 Am. Rep., 405, and *Meeks v. S. P. Ry. Co.,* 56 Cal. 513, 38 Am. Rep. 67, it is sufficient to say that while some of the expressions used in those cases might be taken as favoring respondent's contention in this case, yet the later rulings of the courts from both of those states, as appears from the cases cited by us, leave no room for doubt that, as to trespassers, the rule adopted by those courts is as we have herein stated it to be. It is of no great importance, therefore, what the earlier cases may have held, in view of the fact that the later decisions of those courts are clearly in harmony with the great weight of authority.

From the best-reasoned cases, which, in our judgment, constitute the great weight of authority, we may safely state the following propositions as the settled law, in the absence of any countervailing statute: (1) A railroad company in country districts, except at crossings, owes no active duty to keep a lookout for trespassers who may intrude upon its track, and it need not anticipate their presence there. (2) That it

34 Utah—32

owes no duty to such trespasser, old or young, until he is actually discovered in a place of danger; and, in case of an adult, is not liable for injuring him unless such injury is inflicted willfully or recklessly after his danger is discovered, or in case his position is so prominent and conspicuous that it would amount to willfulness or recklessness not to discover him and avoid injury; that in case of an infant or helpless being, while there is no active duty required to discover them, yet, when they are discovered, or where their position is such that it would amount to willfulness or recklessness not to discover their danger, it is the duty of the railroad company after such discovery to exercise all reasonable care, in view of the conditions and circumstances, to avoid injuring them. (3) That a railroad company owes the active duty of exercising ordinary care not to injure persons who are on or near the track at places in thickly settled portions of cities, towns, and villages where persons have free access to the tracks, and at all other places where the public in any considerable numbers habitually have passed over or along the track for a considerable period of time so as to impart notice of their use of the track to the company, or where the company expressly or impliedly permits persons to pass along or across the track at a particular place or places for a considerable period of time. (4) That when the facts are not in dispute, or where all the facts and inferences that may be deduced from them show that the intrusion in question would constitute a trespass if committed upon real estate generally, then the question is one of law, although the trespass or intrusion was upon a railroad track. In other words, if an intrusion upon real property would be pronounced a trespass as matter of law, it will likewise be so pronounced if committed on a railroad track, and the court must say, as a matter of law, what duty is imposed upon the owner of the real estate or the railroad company in such a case.

From the foregoing no other conclusion is permissible than that the court erred in giving instruction No. 11. Further, there is nothing in the conceded or undisputed facts, as this case now stands, from which a jury might draw a legitimate

inference that the conduct of the engineer was either reckless
or willfully careless in not discovering the child in time to
stop the train, nor that he in fact did see it in time to avoid
the injury, and that his conduct was reckless and willful in
that regard or in any respect. The court, therefore, in view
of all the evidence, should either have granted appellant's
motion for a nonsuit, or have given its request to the jury to
return a verdict in its favor.

The judgment of the lower court is therefore reversed, and
the cause is remanded for a new trial. Costs to appellant.

McCARTY, C. J., concurs.

STRAUP, J. (concurring in part, and dissenting in part).

I concur in a reversal of the judgment because of error in
the charge. From the conclusion reached that the court erred
in refusing to grant a nonsuit or to direct a verdict in favor of
the defendant, I dissent.

I agree with the general rule that train operatives ordi-
narily owe no duty of lookout to discover trespassers on the
track; that, when an adult trespasser is discovered, trainmen
may assume that he will take care of himself and keep out of
danger until a situation is disclosed which indicates that he is
not aware of the danger threatening him; that, when a tres-
passing child of tender years is discovered, trainmen may not
assume that it will take care of itself and keep out of danger,
but they are required to use care commensurate with the
situation to avoid injuring it; that while trainmen are not
usually required to foresee or anticipate the wrongful pres-
ence of persons upon or about the track, yet if they have
knowledge that at certain times and places it has been the
custom and general habit of persons, although technically
trespassers, to traverse the track, or to be about or upon it
without objection, train operatives, in the exercise of ordinary
care, may be required to take notice of such fact and to regu-
late their conduct accordingly. With the general statement
of these principles, as made by Mr. Justice Frick, and with
much that he has said concerning them, I agree. I also agree

with him that the evidence is insufficient to show that the track at the place in question was so frequently traversed by the public or the people of the neighborhood, or for such a length of time under circumstances to warrant a finding that the making of such use of the track had been general or customary, or without objection, or that the defendant or its employees had acquiesced therein, or that because of such usage trainmen owed the duty of care to anticipate the presence of persons upon or at the track at such place. I therefore agree with him in the conclusion reached that the train operatives did not owe a duty to exercise care to keep a lookout for the presence of persons at the place of the accident, and that no duty to use care arose until the child was discovered. I however, disagree with the statements and expressions in the opinion which seemingly indicate a holding (probably *obiter dictum*) that, in cases where a duty to use care is owing, the question whether trainmen are required to keep a lookout is one of law and not of fact.

Every case of actionable negligence involves a legal duty to exercise care, and a breach of that duty resulting in injury. Where there is no legal duty to exercise care there can of course be no actionable negligence. One may owe a legal duty to exercise care with respect to some persons, but as to others he may owe no such duty. A master owes a legal duty to his servant to use care in furnishing and maintaining suitable premises. He ordinarily owes no such duty to a mere stranger, or to a trespasser. A railroad company, as a matter of law, owes a duty to those rightfully upon its cars and about its track and premises to use care in the handling of its cars and in the running of its trains, but it, as a general rule, owes no such duty to a mere trespasser. The questions whether a legal duty to use care is owing and the degree of care, whether ordinary care or a high degree of care, are questions of law to be determined by the court. When the standard of care is fixed, as when specific duties are prescribed by statute or ordinance, then a failure to come up to such standard, or to perform the duties so prescribed, is generally held to be negligence *per se*. When, however, the standard is not fixed, nor

the duty so prescribed, then, generally, two questions of fact arise: First, what, under all the facts and circumstances of the case, is ordinary care or high degree of care as defined by the court? and, second, did the party charged with negligence come up to that standard? Train operatives owe no duty to mere trespassers to exercise care, and hence they cannot be chargeable with negligence in failing to observe a lookout to discover them, or to otherwise run or operate the train with reference to them until their presence is discovered. This is so, not because no legal duty to observe a lookout was imposed, but because no legal duty to use care was owing. That is, the thing which makes the failure to keep a lookout in such case not actionable negligence is that no duty to use care was owing from the train operatives, rather than that no specific duty to observe a lookout was imposed. By the expressions found in the cases where courts have said that no legal duty to keep a lookout was owing, courts only mean that, since the train operatives did not owe a legal duty to use care, they could not be chargeable with negligence in failing to observe a lookout. The same would be true if the particular conduct complained of was the failure to ring the bell or sound the whistle, or arrest the speed of the train, or if the conduct complained of pertained to some other particular in the management or handling of the train. In each instance the court would declare, as matter of law, that negligence could not be predicated on a failure to do such things because no legal duty to exercise care was owing. When, however, the court determines in a given case that a legal duty to use care is owing, then the question whether the omission or commission of specific acts was or was not a breach of such duty is ordinarily a question of fact and not of law. In such case the court cannot say, as matter of law, that a legal duty was imposed to keep a lookout, any more than that a legal duty was imposed to ring a bell or sound a whistle, or arrest the speed of or stop the train, or that the doing of some other particular thing was required. In other words, when the court determines that a duty to use care on the part of the train operatives is owing, it cannot also say, except where specific duties are prescribed

by statute, that the train operatives were in duty bound to look, or that they were not required to look, or that the failure to do so was or was not negligence. If in such a case the court may determine under what circumstances it is or is not negligence on the part of the train operatives to observe a lookout, and leave to the jury only the question to determine whether the act was or was not performed, then for the same reason, could the court also determine under what circumstances it is negligence to fail to ring a bell or sound a whistle, or arrest the speed of or stop the train, and, again, only leave to the jury to determine the question whether the act which the court found ought to have been done was or was not done. The court may not thus characterize the commission or omission of specific acts as negligence or due care, and leave to the jury only to determine whether they were omitted or committed, except in comparatively few instances. If the statute has imposed specific duties, such as to ring the bell, or sound the whistle, or limit the rate of speed, the court may, according to the weight of authority, and as held in this jurisdiction, declare the failure to perform them negligence *per se*. There the court declares that the running of the train at a greater rate of speed than that prescribed by statute, or the running of it without giving the statutory signals, is negligence, and leaves it to the jury only to determine whether the statutory signals were given or the train run at a speed in excess of that prescribed by the statute. But in a large majority of cases involving negligence, the law has not prescribed what men shall do. In the large majority of instances no specific duty has been prescribed. The standard fixed is that of ordinary care, such care as a reasonably careful and prudent person would take in the same situation and under like circumstances. To illustrate: The law does not prescribe at what rate of speed a train may be operated outside of cities and towns. In such case, when a duty of care is owing to one, two questions of fact ordinarily arise: First, what is an imprudent speed? and, second, did the party charged run the train at such imprudent speed? So when a duty to use care is owing, and it is claimed that a lookout ought to have been

observed, again two questions of fact generally arise. First, was it imprudent on the part of the train operatives, in the exercise of ordinary care as defined by the court, and under all the facts and circumstances of the case, not to observe a lookout? And, second, if so, did they fail to observe a reasonable lookout? And it may be said as a general rule when the court has determined and charged the jury that the use of ordinary care is owing, and when the standard has not been fixed by law, except such care as a reasonably careful and prudent person would exercise under like conditions and circumstances, the jury, from all the facts and circumstances of the case, must first find and determine what is ordinary care as the court defined it, and then measure the conduct of the party charged by that standard. For these reasons, I am of the opinion that, in a case where a duty to use care is owing, the question whether a lookout ought to have been observed is generally one of fact and not of law. Now, in this case, the child being a trespasser, the trainmen, under the facts and circumstances disclosed, owed no duty to exercise care to discover its presence. The court ought to have so instructed the jury. When the court charged the jury, as he in effect did, that the trainmen owed a legal duty to exercise care to discover the child, though a trespasser upon the track, and, too, regardless of conditions or circumstances, and that a different duty was owing from them, regardless of conditions or circumstances, to observe a lookout to discover such a trespasser, than an adult trespasser, the court committed error. While the court directed the jury that they, in determining whether ordinary care was exercised, could consider the surrounding facts and circumstances as disclosed by the evidence, nevertheless the court charged that a duty to exercise care was owing to discover the trespassing child regardless of conditions. As pointed out by Mr. Justice Frick, under some conditions the law imposes a duty to exercise care to discover the presence of persons on or about the track, though technically trespassers; under other conditions, the law imposes no such duty to discover the presence of trespassers, whether adults or children. When, and under what circumstances,

the duty was owing, the jury were not informed, except as
they were erroneously informed that the duty was owing to
discover a trespassing child regardless of conditions. Because
the jury in this regard were given a wrong principle of law,
I concur in a reversal of the judgment.

I, however, do not concur in the holding that the court erred
in refusing to grant a nonsuit or to direct a verdict. Assum-
ing that the facts do not warrant a holding that a duty to use
care was owing from the train operatives to observe a rea-
sonable lookout to discover the presence of persons on the
track at the place in question, and that no duty to use care on
their part arose until they discovered the child, the question
of law to be determined by us is, is there any evidence to justi-
fy a finding by the jury that the train operatives discovered
the child, and that they, after such discovery, in the exercise
of all reasonable care commensurate with the situation, could
have avoided injuring it? The point on which we principally
disagree is, when does the duty to exercise care arise? Is it
from the time the object is seen and discovered on the track
by the train operatives, and by looking along the track it could
be discerned to be a human being, or from its appearance and
surrounding conditions the train operatives ought reasonably
to have expected that the object discovered by them may
probably be a human being, or is it from the time the train
operatives themselves say that they recognized or discerned
the object to be a human being? The evidence bearing upon
the question shows that the track ran in an easterly and wes-
terly direction. The child was lying between the rails of the
track about two hundred and twenty-five feet west of a high-
way crossing. The train was running in an easterly direc-
tion at a rate of speed of from thirty-five to forty miles an
hour. The engineer operating the train testified on behalf of
planitiff that under the rules of the company, in approaching
crossings, he was required to observe a lookout for the pres-
ence of persons who might be at or about them; that when he
approached the whistling post, which was about one-half mile
west of the crossing, he looked along the track in advance of
the engine and in the direction of the crossing; that the coun-

try was flat and open, the track substantially straight, the day clear, the view unobstructed, the time about 1:40 p. m.; that he looked along the track in advance of the engine before he approached the whistling post, and practically looked in the direction of the crossing along the track from that time on until he struck the child, and that the performance of no other duties took his attention away from his looking in advance of the engine; that when he was about two hundred yards west of the crossing, or about one hundred and twenty-five yards west of the place where the child was, he discovered an object lying between the rails of the track, which he thought "might be old clothes or weeds, most anything;" that from the time he first saw the object until he struck the child he looked at it and the crossing; that he saw the object before he saw the crossing; that a person on an engine at a speed of thirty-five or forty miles an hour could not see an object on a track as well as one standing still; that he did not recognize the object as a child until he was within sixty feet of it, and when "it started to get up and raised its head and looked around towards the engine;" that he then applied the air, and did all that was possible to stop the train; that from the time when he first discovered the object on the track he made no effort to slacken the speed or check the running of the train until within sixty feet of it; that when he attempted to stop the train he was then unable to do so until it had run a distance of about five hundred and forty feet. The plaintiff also gave other evidence showing that on a subsequent day the clothes which the child wore on the day of the accident were folded up and a string tied around the middle of them and placed on the track between the rails at the place of the accident, and that one standing on the track eight hundred feet to the west could see that the bundle was clothes, and that it was lying between the rails. Evidence was also given of further experiments which were made by placing a child smaller than plaintiff's child on the track between the rails at the place of the accident, the child being in "a sitting position and leaning over the rail with its face towards the north," and that one standing on the track one thousand and three hundred

feet to the west could see the child, and at a distance of eight hundred feet "could see the child's face plainly, and see and know that it was on the track between the rails," and five hundred feet away "could recognize whose child it was." Testimony was also given in behalf of plaintiff by an expert witness that an engineer in his cab when the train was running from thirty-five to forty miles an hour on an ordinary smooth track could better see an object on the track than a person standing on the track at the same distance; and that the train, under all the circumstances shown in the case, could have been stopped within a distance of one hundred yards. Upon this evidence the holding of the majority of the court is to the effect that, by the engineer's looking along the track in manner as testified to by him, but one finding is justified by the jury, and that is that he did not discover the child until the train was within sixty feet of it, and then, of course, it was too late to avoid the injury. Such a conclusion seems to be reached mainly upon the testimony of the engineer, wherein he testified that, notwithstanding his looking along the track in advance of the engine and in the direction of where the child was lying, he could not and did not recognize it as a child until he was within sixty feet of it. The question is not now, was the engineer in the first instance required to anticipate the probable presence of persons upon the track at such place and to observe a reasonable lookout for them, and for that reason to be held chargeable with a dereliction of duty in failing to observe a lookout, and guilty of negligence in failing to see and observe something which could have been seen and discovered had he looked. There is evidence to justify a finding that from the time the train left the whistling post until it reached the place where the child was struck the engineer was looking along the track and in the direction of the crossing and of where the child was lying, and that during such time his attention was not occupied by anything else. In fact, the evidence showing such matter is substantially without conflict. The question, then, is not whether the engineer should be held chargeable with negligence in failing to see and to observe something which could have been

seen and observed by him had he looked, but what could be seen and observed by him in looking along the track in manner as testified to by him in the direction of the crossing and of where the child lay? Suppose a horse had been lying on the track at the place in question under similar circumstances as disclosed by the evidence, and the engineer had testified, as here, that he was looking in advance of the engine, and in the direction of the object, and had also testified that he could not see the object until he got within two hundred yards of it, and that he then supposed it to be something which could not be injured and which would not endanger the train, and that he did not discover that it was a horse until he got within ninety feet of it, when the horse began to struggle, is that the end of the inquiry? Suppose an average-sized man had been lying on the track, and similar testimony had been given by the engineer with respect to his looking along the track in advance of the engine, and that he did not discover the object until he got within one hundred and twenty-five yards of it, and that he then supposed it was some inanimate thing, and did not discover that it was a human being until he was within sixty feet of it, when the man raised his head and looked around, is that, again, the end of the inquiry? It may be said, as intimated in the opinion, that such objects on the track would be so prominent that in looking along the track the inference of seeing them at a greater distance would be unavoidable, or that the testimony given in such cases that they were not seen at a greater distance would be improbable or false. But shall it also be said that when testimony is given with respect to a smaller object, a two year old child, that by looking along the track it was not seen until within one hundred and twenty-five yards of it, and that it was not discerned to be a child until within sixty feet of it, such testimony must be taken as conclusive of the matter because it may seem quite probable, notwithstanding there is evidence to show that such an object could be seen at a distance of one thousand and three hundred feet, about one-half the distance between the whistling post and the crossing, that at the distance of eight hundred feet the face of such a child could

plainly be seen and recognized, and that at such a distance even the bare clothes which the child wore on the day of the accident, and which were folded up and placed between the rails, could be seen and recognized as clothes? In this respect I think the majority of the court have dealt not with a question of law, but with a pure question of fact, and have in effect themselves undertaken to determine within what distance an engineer situated as was the defendant's engineer, by his looking along the track in manner as disclosed by the evidence, could see an object the size of a two year old child lying between the rails, and within what distance it could be discerned that it was a child, or else have assumed that the testimony which the engineer gave on the subject was conclusive. It may be, as intimated in the opinion, that the evidence of the experiments may not be entitled to as much weight as the testimony of the engineer, but that was a matter more properly within the province of the jury. Furthermore, when the engineer testified that he discovered the child one hundred and twenty-five yards away, such distance was only estimated by him. When asked how far west of the railroad crossing he was when he first saw the object, he said: "Oh, I guess I was about two hundred yards; something like that." When asked how far he could see the object, he said: "I could see it for about one hundred and twenty-five yards. Now this is not positive. I did not measure it. It is to the best of my judgment one hundred and twenty-five yards." By other portions of his testimony it appears he testified: "To be absolutely safe that you know the object is between the rails, I don't think you could see it over two hundred yards." On cross-examination he testified that he did not mean that it was two hundred yards away that he saw the object, and could see that it was on the track, but that the distance at which he could see that the object was on the track was not over one hundred and twenty-five yards. Witnesses, when testifying from recollection concerning distance and time, are apt to either overestimate or underestimate the real fact; not because they intend to do so, but because of the difficulty in fixing them with any degree of exactness. In many instances witnesses can

only approximate them. That was all this witness did. When such is the case the inference or conclusion to be drawn from the fact or facts so testified to can, likewise, not be definite nor exact. The inference or conclusion must, of necessity, be as flexible and indefinite as is the testimony of the facts itself from which the inference or conclusion is inferred or drawn. But apart from these considerations, from other evidence in the case that the engineer was looking in advance of the engine, and in the direction of where the child was lying, and that such an object could plainly be seen at a much greater distance, the jury might find that the engineer was mistaken in his estimate of the distance at which he first say the object, and that he saw it at a much greater distance.

An engineer discovering an object on the track may not assume, as matter of law, that it is inanimate and of no consequence, and regulate his conduct accordingly. Whether he may do so, I think, ordinarily depends upon the character and appearance of the object and the facts and circumstances of the case. Upon this question, I think, the authorities are generally of one accord. In this connection it is said that the case of *Hyde v. U. P. Ry. Co.,* 7 Utah 356, 26 Pac. 979, is not applicable. I think the purport of the decision and the points before the court for review in that case have been misconceived. In the opinion of the majority of the court a quotation is set forth of a portion of the charge relating, not to the defendant's duty nor its negligence, but to the negligence of the parents and the child, which the reporter inserted in the report preceding the opinion. The charge is nowhere referred to by the court, either in the state of the case or in its opinion. The following statement made by the court in its opinion clearly shows that the charge of the court with respect to the negligence of the defendant or its duties, or even with respect to the negligence of the parents or the child, was not before the court for review:

"The questions of the negligence of the parents and of the railroad company were submitted to the jury under proper instructions by the court, to which no objection is taken, and we see no reason for disturbing their verdict on the ground that it is not supported by the evidence."

The questions presented for review did not involve the charge relating to the negligence of either party, but involved the question whether the verdict was justified by the evidence. It was there contended that the verdict was not justified because the parents were guilty of contributory negligence in permitting the child (between four and five years of age) to be and remain on the track and there go to sleep between the rails. In reply to this contention the court observed:

"But, even if the parents were guilty of contributory negligence, we think, under the circumstances of this case, such negligence should not defeat a recovery. Although an injured party may be guilty of negligence contributing to the injury complained of, yet he is entitled to recover against a defendant who, after discovering the plaintiff's negligence, fails to use due diligence to prevent accident, but who goes ahead wantonly or recklessly and commits injury."

In that case, "both the engineer and the fireman testified that they saw the child when it was from two hundred to three hundred yards away, but thought it was a piece of cloth or paper, and could not tell what it was until they got within about thirty feet of where it lay, when they discovered it was a child by seeing its hair, but that it was then too late to stop the train before reaching it. They further testified that they did not slacken the speed of the train when they saw the object on the track until they ascertained it was a child, when they immediately did all they could to stop the train as soon as possible, but that the train could not be stopped in a less distance than about one hundred and twenty-five feet." True, it was also shown that "there was a store close by, and a schoolhouse not far off, and children were frequently on and along the track at this point." But the ruling of the court in that case is not predicated on the assumption that there were facts showing that the track at such place had been traversed or had been used by people of the neighborhood or by the public, or that persons otherwise had been about the premises under circumstances where it may be said that the railroad company acquiesced in such use being made of the premises, and for that reason the train operatives were required to take notice of such fact, and for that or other reasons to observe a look-

out to discover the presence of persons who might be about the premises and track at such place, and that they were negligent in failing to observe such lookout. From the determination of any question considered by the court, or from any expression used in the opinion, I do not find anything to warrant the conclusion that a ruling was made that the train operatives owed a duty of care to observe a reasonable lookout to discover children or persons at the place of accident, or that in view of such duty the case was properly let to the jury. What the court said and decided on this point was: "We think in this case that when the servants of the defendant saw an object on the track, in a place frequented by children and others, and failed to slacken the speed of the engine so as to be able to stop the train before striking the child, it was negligence" for which the defendant was liable, notwithstanding the fact that the child was a trespasser and the parents guilty of contributory negligence. The fact that it was shown that children had been frequently upon the track at the place in question bore only on the question as to whether the trainmen, when they discovered the object, ought to have anticipated and expected that it probably was a human being, and not that they were required in the first instance to use care to discover the probable presence of persons or children at such place.

If the conclusion reached by my Brethren is correct, that the charge of the trial court in that case was before the Supreme Court for review, and that it pertained to questions with respect to the defendant's duties and negligence in the premises, and is susceptible to the meaning ascribed to it by them then the case is an authority not only justifying the submission of this case to the jury, but also sustaining the charge of the court here reviewed by us. The language quoted by my Brethren, much less the language not quoted, does not bring the case within the rule which is termed the "intermediate rule." The language does not imply the meaning that if the jury found that the track at the place in question had been frequented by children, or that they or other persons had been accustomed to traverse it or be about the same, or because of the assumption of any such facts by the court, a

duty of lookout was owing on the part of the train operatives to discover the presence of persons at such place. From the language quoted it appears that the things upon which the court directed the jury that a duty of lookout was owing, and which the jury were directed to consider in determining whether a proper lookout was observed, was not the fact of any usage which children or other persons had made of the track, or of their frequency about it, but the fact that the train operatives were approaching a crossing and that there were houses and people residing close by. The elements upon which the court in the charge directed the jury a duty was owing, and which the jury could consider in determining whether it was properly performed, existed here as well as there. The defendant here was likewise approaching a crossing, and there were houses and people residing close by. But from a reading of the entire instruction it is quite clear to me that the court was not then charging with respect to the defendant's duty in the premises in the first instance, but stated to the jury the well-recognized principle of law that notwithstanding the negligence of the parents or the child, nevertheless, if the train operatives saw the child, or, having discovered an object on the track, and from the proximity of settlements, the approach of a crossing, nearby houses, and other surrounding facts, they ought to have expected that the object discovered may probably be a human being, the defendant would be liable if reasonable care was not exercised to avoid injuring it.

Again, it is said that the case of *Keyser v. C. & G. T. Ry. Co.*, 56 Mich. 559, 23 N. W. 311, 56 Am. Rep. 405, is distinguishable from the case here on the ground of gross negligence. I do not think that Mr. Justice Sherwood, who wrote the opinion, ruled the case on any such ground. The syllabus of the case on this point is:

"It is negligence not to slacken the speed of a train so that it can be stopped if necessary, if the engineer has seen an object on the track, a long way off, and cannot tell what it is."

As stated by the court in that case, it was there made to appear

"That the country at the place and in the vicinity of where the accident occurred was somewhat low and wet, and grown up to brush and berry bushes, and, though sparsely ꜱsettled, was occasionally visited by persons in the vicinity, and others who gathered berries. There were two road crossings within three-quarters of a mile of where the plaintiff was struck by the train. The engineer of the train was sworn on behalf of defendant, and gave evidence tending to show that the train was running at the rate of thirty or thirty-five miles per hour; that with the number of cars composing the train it could not be stopped at a less distance than from four to five hundred feet; that when he first saw the plaintiff upon the track his engine was from three thousand feet to two thousand five hundred feet from it, and he resembled a stick of wood lying upon the track; that he was lying down; that when he first discovered that it was a child which he saw his engine was about one thousand two hundred feet from the plaintiff."

The trial court in that case charged in substance that there was nothing in the evidence warranting the assumption that the train operatives were required to keep a vigilant lookout in the locality in question, and further charged: "The only question that is left for you to consider and determine is whether the engineer and fireman in charge of the engine that struck the child, after they discovered him and realized the fact that he was of that age that he was possibly helpless to take care of himself and get off from the track, did all that an ordinarily prudent and careful engineer and fireman should have done under the circumstances, warning the child of his danger and stopping the train, and thereby avoid, if possible, killing or injuring him." A verdict was obtained in favor of the defendant, from which the plaintiff prosecuted an appeal. In reviewing the charge and in reversing the judgment, the court said:

"It is apparent from the record that something made its appearance upon the track, indicating danger a long way ahead of the train, and evidently in a locality where it would least be expected. It was discovered by both the engineer and the fireman. The occurrence was of a character to call for increased vigilance on the part of the defendant's trainmen in determining the char-

34 Utah—33

acter of the apparent obstruction. It should have, at least, caused the engineer to slow down the speed of his engine to such a rate that, in approaching it, he could have stopped his train, if necessary, to prevent injury before reaching the object of danger."

It was further said:

"Under all the circumstances stated in the record, I do not think that such a lookout as was called for by the appearance of the child upon the track was observed by the trainmen."

From a reading of the case it is very clear to me that the ruling, so far as it involved the point in question, was based on error committed by the trial court in submitting to the jury only the question for determination whether the trainmen did all that ordinary prudence and care required after they discovered that the object was a child, instead of also leaving to them the question for determination whether they did all that ordinary care and prudence required after they discovered the object on the track. This view is strongly enforced by what the court said on a subsequent appeal of the same case (66 Mich. 390, 33 N. W. 867), where it was said by the court that when an object is discovered on the track, and its character is unknown to the engineer,

"Ordinary care and prudence for safety of human life require that he should reduce the speed of his train to such an extent that he can stop, if necessary, before reaching it, and not take the chances of probability that the object discovered is not a human being because not expected upon the track at that point."

So, in the case of *Meeks v. S. P. R. R. Co.,* 56 Cal. 513, 38 Am. Rep. 67, where there was testimony tending to show that at the place of injury, and for a considerable distance beyond, the road of the defendant was practically straight and free from weeds and other like obstructions; that the day was clear, and that at the time of the injury the plaintiff (a child between six and seven years of age lying on the track) could have been seen and recognized as an object on the track at a distance of from three hundred to three hundred and fifty yards; that one of the trainmen on the engine testified that he saw the plaintiff at a distance of four hundred to five hundred feet ahead, but supposed it was a bunch of leaves or weeds, or

some other insignificant object, until the train got within about one hundred and fifty feet of the plaintiff, when he discovered it was a child; and that no signals were given, nor attempt made to slacken the speed of or stop the train until the object discovered was recognized to be a child was sufficient evidence of negligence.

My conclusion, therefore, is that when train operatives discover an object on the track, whether, under all the circumstances, they may act upon the assumption that it is some inanimate thing, or whether they ought to anticipate that it may probably be a human being, is ordinarily a question of fact. Although no duty in the first instance be imposed to discover the presence of persons at a place, yet, if the jury should find from what the trainmen saw and discovered, and from all the facts and circumstances surrounding them, they ought to have anticipated that the object discovered might probably be a human being lying prone upon the track, or a child of tender years in a place of danger, a duty to exercise care would arise, which, if performed negligently, resulting in injury, would constitute actionable negligence.

It, however, is intimated that the rule announced in these cases has been departed from by subsequent cases from the same courts. This claim is based upon the statement made in subsequent cases that no duty of care was imposed on train operatives to observe a lookout to discover trespassers. That same principle is recognized in *Keyser v. Ry. Co.*, supra, and in *Meeks v. Ry. Co.*, supra. No contrary doctrine is announced in these cases. But the doctrine is there announced that when train operatives discover an object on the track, under circumstances from which they may or ought reasonably to expect the object discovered may be a human being, a duty to exercise care and vigilance arises. This doctrine is not disputed by subsequent cases from the same courts, nor is it repudiated, but, I think, supported by the weight of authority.

Special reference is made to the case of *So. Ry. Co. v. Chatman*, 124 Ga. 126, 53 S. E. 692, 6 L. R. A. (N. S.) 283, and notes to cases in 4 A. & E. Ann. Cas. 675. But these

cases and notes are only to the effect that no duty was imposed to observe an outlook to discover trespassers, whether adults or children. The case of *Ry. Co. v. Williams*, 69 Miss. 631, 12 South. 957, cited in the prevailing opinion, is, I think, the only case cited which may be said to make against the doctrine announced in the Hyde, Meeks, and Keyser cases. But the decision of each case is dependent upon its facts. As far as made to appear in that case, there was no evidence given except the testimony of the engineer concerning the appearance of the object discovered, nor were there, apparently, any facts or circumstances shown from which a finding was justified that when he first discovered the object he ought to have expected that it likely was a human being. If there were no evidence in this case except that of the engineer concerning such questions, much that divides us here would disappear. Furthermore, the Mississippi court adheres to the doctrine that, though a trespassing child is discovered in a place of danger, no duty is imposed on the train operatives, except "abstention from willful or wanton injury," a doctrine repudiated by this court.

From the testimony of the engineer that he looked along the track in the direction of the crossing from the time he left the whistling post, that he saw the object before he saw the crossing, that from the time he discovered the object on the track one hundred and twenty-five yards away he looked at it and the crossing until the child was struck, and from all the evidence in the case tending to show at what distance such an object could plainly be seen and recognized by looking at it, a finding might properly be made that the engineer discovered and discerned the object at a greater distance than that testified to by him. The jury were authorized not to assume as matter of law that the engineer saw what might be seen had he looked, but to draw the inference as matter of fact that he, in looking, saw what others saw in looking under similar conditions. There is testimony tending to show that from his position on the engine he was able to better see and discern an object on the track than persons standing on the track looking in the direction of the object at the same distance. There

being evidence tending to show that the bare clothes which the child wore could be seen between the rails and recognized as clothes at a distance of eight hundred feet, and that at such distance the face of a child smaller than plaintiff's child could plainly be seen, and at five hundred feet it could be recognized whose child it was, the jury would be authorized to find that the engineer in looking at a similar object at the same distance could at least sufficiently discern its character to induce the expectation that it might probably be a child, especially in view of the circumstances that it was lying near a crossing, that a residence was only a short distance away, and that he had theretofore several times seen children hanging clothes on the railroad fence near the place of the accident.

Upon the record, I think the evidence sufficient to send the case to the jury upon proper instructions.