## GILLIGAN v. DENVER & R. G. R. CO.

No. 2501.  Decided November 24, 1913 (136 Pac. 958).

1. RAILROADS—INJURIES TO PERSONS ON OR NEAR TRACKS—CARE REQUIRED.  While a railroad company is not bound to exercise ordinary care to prevent injury to a bare licensee, yet where a building, with the acquiescence of the company, had been erected upon its right of way, and used continuously for more than forty years, the relationship existing was more than bare licensor and licensee, and the railroad company was bound to use ordinary care to prevent injuring the occupant and his property.[1]  (Page 547.)

2. NEGLIGENCE—NATURE AND ELEMENTS OF NEGLIGENCE.  Where the law imposes the duty of ordinary care, there is no distinction between negligence arising from negative acts of omission and positive acts of commission.  (Page 550.)

3. RAILROADS—INJURIES TO PERSONS ON OR NEAR TRACKS.  Where a railroad company permitted a house to be erected upon its right of way, the duty imposed upon it to exercise ordinary care to prevent injury to the occupant is not limited to an injury occurring on its track.  (Page 551.)

4. RAILROADS—INJURIES TO PERSONS ON OR NEAR TRACKS—ADMISSIBILITY OF EVIDENCE.  In an action against a railroad company for an injury to an occupant of a house located on its right of way, evidence as to the use and occupation of the right of way by other persons near the house in question was properly admitted to show the character and extent of the use and the relationship of the parties.  (Page 553.)

APPEAL from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by Patrick J. Gilligan against the Denver & Rio Grande Railroad Company.

Judgment for plaintiff.  Defendant appeals.

AFFIRMED.

---

[1] Young v. Clark, 16 Utah, 42, 50 Pac. 832; Teakle v. San Pedro, L. A. & S. L. Ry. Co., 32 Utah, 276, 90 Pac. 402, 10 L. R. A. (N. S.) 486; Palmer v. Railroad, 34 Utah, 466, 98 Pac. 689, 16 Ann. Cas. 229, distinguished.

*Van Cott, Allison & Riter* for appellant.

*Willard Hansen* for respondent.

FRICK, J.

This was an action to recover damages for personal injuries and loss of and damages to personal property which respondent suffered and sustained through the alleged negligence of appellant. The accident causing the injury occurred on the 15th day of February, 1912, at Bingham Canyon, Salt Lake County. The injury and damages aforesaid were caused by a train composed of an engine and three cars loaded with ore. The engine and cars were derailed, or left the track, rather, in descending a steep grade after the trainmen in charge had lost control of the same. It was in substance alleged in the complaint that the trainmen in charge of said train lost control thereof for the reasons:

(1) That appellant had negligently failed to equip the engine and cars aforesaid with proper and sufficient braking appliances; (2) because the rails were so worn that the braking appliances on said engine and cars were useless, causing the wheels of said cars to skid on the rails and to leave the track; and (3) because the train was negligently managed and operated at a great and dangerous rate of speed while descending a steep grade, and that for all of said reasons the engine and cars left the track and caused the injury and damages complained of.

The undisputed facts, in substance, are: That on the 15th day of February, 1912, the respondent, as tenant, was occupying a portion of a certain building in Bingham Canyon, using the same for a tailoring establishment, which business or occupation respondent followed; that early on the morning of the day aforesaid the train referred to above, composed of what is called a Shay engine and three cars loaded with sulphide ore, was descending a steep grade on what is called the "Copper Belt" railroad, which is located along the side of the mountain and passed the rear end of the building occupied by respondent; that before reaching the point

where said building was located the trainmen lost control of said train, and when the train had run down the track at a very high rate of speed to about where said building was located the three cars left the track on the side nearest the mountain, while the engine cut loose from the cars, left the track, and rolled down the hill, striking the wall of the building adjoining the one occupied by respondent, while the tender and trucks passed into and through the building occupied by him in which he and others were asleep at the time; that the tender and trucks aforesaid, in passing through the building, seriously injured the respondent and destroyed a large amount of tailoring goods which he had in stock; that the building in question was located entirely within a line drawn one hundred feet parallel to the line of said railroad track which was owned and operated at the time of the accident, and for a long time prior thereto, by the appellant as the successor of the original owner, which was known as the Bingham Canyon & Camp Floyd Railroad Company, organized in September, 1872; that appellant claimed said one hundred foot strip on which said building was standing as being a portion of its right of way, and which strip had been claimed by the original company as more particularly set forth in the case of *Railroad Co. v. Stringham*, 38 Utah, 113, 110 Pac. 868, to which case we refer for a full statement of the facts constituting appellant's claim of title to said one hundred foot strip; that said building was fronting on the principal street of said Bingham Canyon, which street was running lengthwise through the town somewhat irregularly, following the course of the canyon, and the buildings of the town were constructed along either side of said street; that as early as 1870 or 1871 a building had been erected on the spot where the one in question stood, which, for a long time, was used as a public school; that thereafter said building was destroyed by fire, and another one was erected on the same spot; that the building in question, with a number of others on either side thereof, were erected on said one hundred foot strip, and all of said build-

43 Utah—35

ings, including the one in question, ever since 1870 or 1871 had continuously been occupied and used for either public or private purposes, and the ground upon which they stood had been so occupied and used under a claim of ownership, and during all of said time, and at the time of the accident, both buildings and ground were treated and regarded by all as private property which was owned by the occupants or their landlords; that neither the appellant, nor any of its predecessors in interest, had at any time during the time aforesaid, or at all, objected to the use of said buildings and ground for the purposes aforesaid, nor made any claim of ownership to said one hundred foot strip, except as such claim might be deduced from the filing of the maps and plats and the construction and operation of the railroad as explained in the Stringham Case before referred to; that the railroad referred to in said case originally was not constructed as far up the canyon as the point of the accident in question, and the upper portion of the railroad where the accident occurred was not constructed until some time in 1875, when it was constructed as a tramroad with twenty-pound rails per yard laid two feet apart, which road was operated by horse power in propelling cars upgrade and by means of gravity in the opposite direction; that the railroad in question was not constructed nor operated in the manner as described it was on the date of the accident until about the year 1902 and thereafter, at which time the tramroad was replaced by an ordinary narrow guage railroad.

All of the evidence relating to the use of the one hundred foot strip, and the buildings thereon, and the claims made by the apparent owners and occupants thereof, was admitted over appellant's objections.

We shall not set forth the evidence describing the accident, nor that with respect to the alleged negligence of appellant, since counsel do not seriously contend that there was not sufficient evidence with respect to the matters complained of to authorize a finding by the jury that appellant was guilty of negligence in the sense that it and its employees in charge of the train omitted to exercise ordinary care.

For the purposes of this decision only, we shall also assume, without deciding, that the legal title and ownership of the one hundred foot strip on which the building in question was located was in appellant, and that it acquired title therto from its predecessors in interest as before stated. The record discloses that this was the view taken by the trial court. Upon that theory the court in substance charged the jury as follows: That while the right of way of the railroad company partakes of all the incidents of private ownership and control "nevertheless if, with the knowledge and without the objection of the said company, persons are permitted to use the right of way either for the erection and maintenance thereon of buildings or for a passageway over the same, and such use for a very long period of time has been definite, open, and continuous, a license from the company to make such use of the right of way is presumed, and it would be the duty of the company to exercise reasonable and ordinary care in the operation of its railroad to prevent accidents and injuries to such persons and their property." The appellant requested the court to charge the jury that the respondent was a bare licensee on its right of way, and as such it owed him no duty except to refrain from "willfully, wantonly, or maliciously doing injury, and there is no proof in the case that the injuries of which plaintiff complains were so inflicted." The court refused to so charge, but submitted the case to the jury upon the theory outlined in the portion of the court's charge we have quoted. The jury found for the respondent, assessing his damages in the sum of $15,000, and judgment was duly entered, from which this appeal is prosecuted.

The principal assignment of error relates to the giving of the charge of the court quoted above, and in refusing to charge as requested. Exceptions to the charge as given and to the refusal to charge as requested were taken at the proper time and in the manner required by our practice. Counsel for appellant, stating it in their own language, contend that:

"Inasmuch as the defendant (appellant) was the owner of the ground on which the building occupied by the plaintiff

(respondent) stood, the plaintiff, if not a trespasser, was at most a bare licensee, and the only duty the defendant owed him was to refrain from injuring him willfully or wantonly. There was no duty on the part of the defendant to exercise ordinary care for his protection, and the trial court committed error in so charging the jury."

The question therefore arises:

What, in view of the undisputed facts, were the relations existing between them, and what duty, if any, did the law impose upon appellant with respect to the care it was required to exercise in order to prevent injury to the persons and damage to the property of those who were occupying and using the one hundred foot strip claimed as a right of way by it?

The relation that parties may sustain toward each other, and the duties arising therefrom, cannot, in any given case, always be stated with precision. There are, however, some well-recognized fundamental legal principles from which, when applied to the facts conceded or found in any given case, both the relation and the duties arising therefrom may be deduced. Thirty years ago the New York Court of Appeals, in the case of *Barry v. New York Cent. & H. R. Ry. Co.*, 92 N. Y. at page 292, 44 Am. Rep. 377, clearly pointed out that where a railroad company knowingly permits others to use, occupy, or pass over its right of way, although it be for their own convenience, for a long period of time, such permissive use, although in one sense a mere license, nevertheless creates certain rights in the persons using the right of way which the railroad company is bound to recognize, and as to them it owes the duty of exercising ordinary care in the operation of its trains and in the management of its railroad in order to prevent injuring them or their property. The doctrine just referred to is clearly stated by Mr. Justice Andrews in the following words:

"There can be no doubt that the acquiescence of the defendant for so long a time, in the crossing of the tracks by pedestrians, amounted to a license and permission, by the defendant, to all persons to cross the tracks at this point. These circumstances

imposed a duty upon the defendant, in respect of persons using the crossing to exercise reasonable care in the movement of its trains. The company had a lawful right to use its tracks for its business, and could have withdrawn its permission to the public to use its premises as a public way, assuming that no public right therein existed; but, so long as it permitted the public use, it was charged with knowledge of the danger to human life from operating its trains at that point, and was bound to use such reasonable precaution in their management as ordinary prudence dictated to protect wayfarers from injury."

The New York Court of Appeals, thus, at an early date, made a clear distinction between the occupation or use of a railroad right of way which is open and long continued, and a mere casual use thereof, although the latter use may also be permissive. For cases illustrating the rights of a bare licensee, see *Nicholson v. Erie Ry. Co.*, 41 N. Y. 525, and *Sutton v. New York Cent. & H. R. Ry. Co.*, 66 N. Y. 243. In the cases just cited it is held that a railroad company is not required to exercise ordinary care in the operation and management of its trains to prevent injury to one who is on its property as a bare licensee or a trespasser. This court has also so held. (*Palmer v. Railroad*, 34 Utah, 466, 98 Pac. 689, 16 Ann. Cas. 229.) As pointed out in the Barry Case, *supra*, however, where persons are in long and continued use or possession of the railroad right of way, the relation between the railroad company and such persons is more than that of bare licensor and licensees, and therefore, as to such persons, the company is bound to exercise at least ordinary care to prevent injuring them while they are on the right of way in the capacity aforesaid. The doctrine outlined above has been adopted by so many courts of last resort in this country that it may be said to be one of general application. This is practically conceded by counsel for appellant. It is also conceded by them that his court is firmly committed to the doctrine as stated in the Barry Case. See *Young v. Clark*, 16 Utah, 42, 50 Pac. 832, and *Teakle v. San Pedro, L. A. & S. L. Ry. Co.*, 32 Utah, 276, 90 Pac. 402, 10 L. R. A. (N. S.) 486. In the latter case the rule is fully elucidated and applied, and hence we refrain from cit-

ing the many cases where the doctrine has been invoked. The case at bar is, however, much stronger in the facts and circumstances from which a duty to those using the right of way may be implied than are most of the cases coming within the class. In the case at bar the occupation and use of the one hundred foot strip was open, continuous, and under a claim of right for a period exceeding forty years. The use of the property was the same as if owned by the occupants rather than that of a bare licensee. While it is true that respondent had not occupied the property for so long a time, yet his rights were the same as those of his predecessors in interest, and appellant for that reason owed him the same duty as occupant of the property as though he had been in possession thereof for the full period of time aforesaid. There can be no doubt that, under the undisputed facts, the respondent was not merely a bare licensee to whom the appellant owed no duty except to refrain from willfully or wantonly injuring him or his property, but upon the contrary it owed him the duty of exercising ordinary care and diligence in the management, operation, and control of its railroad and trains to prevent injury.

Appellant's counsel insist, however, that in view that its ownership of the one hundred foot strip is at least tacitly conceded, therefore, although some duty was by law imposed on appellant, yet as against respondent it was only required to refrain from acts of active, as contradistinguished from acts of passive, negligence. It is said that while respondent might, perhaps, have claimed protection as against active negligence, yet that he could not do so as against what is termed passive negligence. That is, mere acts of omission as contradistinguished from acts of commission. We cannot yield assent to the contention. Nor can we conceive any good reason for the supposed distinction. Where the law imposes the duty of ordinary care, it does not and cannot distinguish between negligence arising from negative acts of omission or positive acts of commission. The only question that the law concerns itself with under such circumstances is: Do the acts complained of constitute

want of ordinary care, and, if so, was the alleged negligence which is the result of want of ordinary care the proximate cause of the injury in issue? Where the acts complained of are in fact willful or wanton, they as a general rule are affirmative, and as such are actionable in favor of a bare licensee, and, indeed, may be so in favor of a trespasser. (*Palmer v. Railroad, supra.*) We think that, where the law fixes want of ordinary care as the test of liability, it becomes wholly immaterial whether the want of ordinary care arises from acts of omission or from acts of commission. That is, the law does not inquire whether the negligence was what is denominated active rather than passive—positive rather than negative.

Counsel with much vigor contend that, although appellant owed respondent the duty of exercising ordinary care not to injure him, yet it was only required to exercise such care in case he attempted to cross its railroad track or was in such close proximity thereto as to be in imminent danger from a passing train or cars. In other words, counsel argue that on any portion of the right of way apart from the track appellant owed respondent no duty except to refrain from willfully and wantonly injuring him, for the reason that under such circumstances respondent himself was a bare licensee. A number of cases which it is contended support the foregoing statement of law are cited. Among the numerous cases cited by appellant, we refer to the following as fair samples coming within the class: *Carr v. Missouri Pac. Ry. Co.*, 195 Mo. 214, 92 S. W. 874; *Kirby Lumber Co. v. Gresham* (Tex. Civ. App.) 151 S. W. 847 *Shults v. Chicago, B. & Q. R. R.*, 83 Neb. 272, 119 N. W. 463; and *Chicago, R. I. & P. Ry. v. Payne* [Ark.] 146 S. W. 487, 39 L. R. A. (N.S.) 217. We have carefully examined all of the cases cited by counsel, and in our judgment they do not support their contention. The only case that apparently does so is the last case cited, and, when the facts in that case are carefully considered, it is clearly distinguishable from the case at bar. It is quite true that it is held in those cases that from the undisputed facts, or from facts as found, the party

injured was a bare licensee, and as such the railroad company owed him no duty except to refrain from injuring him willfully or wantonly. The reason that induced the courts to arrive such a conclusion in those cases was, however, not the one suggested by counsel, but it was for the reason that when the law was applied to the facts in the case no other relation than that of bare licensor and licensee was established. The case of *St. Louis, etc., Ry. Co. v. McCauley* (Tex. Civ. App.) 134 S. W. 798, is, in our judgment, on principle not distinguishable from the case at bar. In that case the railroad company permitted its right of way some distance away from the track and parallel therewith, to be used for upwards of twenty years for a highway, and, in view that such a use was permitted for such a long period of time, it was held that the railroad company was required to exercise ordinary care in the management, operation, and control of its railroad and trains to prevent injury to those who were using the right of way for the purpose aforesaid. It was there contended, as it is here, that the injured person was a bare licensee, and that therefore the company owed him no duty except to refrain from inflicting willful or wanton injury. The court, however, held as already indicated. We especially refer to that case because it emanates from the same court to which counsel refer us as holding that the duty of the railroad company to exercise ordinary care is limited to those crossing or who are attempting to cross its tracks. No attempt was made in the McCauley Case, *supra,* to cross the track, and the injured person did not approach very near thereto,, but was injured because of the negligent operation of an engine, which frightened her horse, which was hitched to a buggy and by reason of being frightened became unmanageable and ran away injuring the plaintiff who was driving him. Limiting the doctrine as counsel suggests would be to rob it of its humanity, and in most cases would merely amount to

". . . keep the word of promise to our ear
And break it to our hope."

We can see neither reason nor justice in such a limitation, and as we read the cases none such is intended to be made by the courts. The rights of respondent and the duty of appellant arose out of the nature and long-continued use of the one hundred-foot strip by the occupants thereof. Had respondent been casually using the one hundred-foot strip at some point distant from the building in question on the morning of the accident and had been injured by the engine or cars after they had left the track, a different question might be presented. He was, however, injured at a place where he had a right to be, and appellant had for many years recognized such a right by acquiescing in the use of the ground by the occupants of the buildings. This being so, the law imposed the duty on the appellant of exercising ordinary care for the safety of those who were occupying the one hundred-foot strip while they were where they had a right to be, and so long as its negligence was the proximate cause of any injury inflicted on them they may recover.

We are clearly of the opinion that the court committed no error in charging as it did, and therefore could have committed none in refusing to charge as requested.

Nor did the court err in admitting the evidence with regard to the occupation and use of the one hundred-foot strip at and near the point of the accident. The evidence, under the pleadings, was admitted and was admissible for the purposes of showing the character and extent of the use of said strip, the relation of the parties, and the duty that was enjoined upon the appellant, and for those purposes was clearly proper.

Appellant also offered a request to charge that it was not liable to respondent for any goods of his that were stolen or taken away by others. The court refused this request, and it is insisted that it erred in doing so. Appellant's rights in that respect were, however, clearly guarded by the court's general charge, and hence it has no real cause for complaint.

The judgment is affirmed, with costs.

McCARTY, C. J., and STRAUP, J., concur.