CUMMINGS v. HINES, Director General of Railroads.

No. 3465.   Decided January 3, 1921.   (194 Pac. 901.)

1. RAILROADS—SHEEP HERDER HELD GUILTY OF CONTRIBUTORY NEGLIGENCE PRECLUDING RECOVERY FOR INJURIES TO ANIMALS. A herder in charge of a flock of 2,000 sheep grazing on the public domain, who attempts to drive the sheep across a railroad at a place other than a public crossing, when he knows a fast passenger train is overdue, is guilty of contributory negli-

gence proximately causing injury to the animals, so as to preclude recovery therefor by the owner.

2. RAILROADS—NOT REQUIRED TO KEEP LOOKOUT FOR SHEEP CROSSING TRACK ON PUBLIC DOMAIN. Though sheep grazing on the public domain are not trespassing when they cross a railroad track at a place other than a crossing, the railroad company has the exclusive right to the use of its tracks at that point, and the herder is at most a mere licensee to whom the company owes no duty to keep a lookout.

3. APPEAL AND ERROR—DEFENDANT CANNOT COMPLAIN VERDICT WAS FOR LESS THAN EVIDENCE WOULD JUSTIFY. Defendant cannot complain that the verdict for plaintiff was for little more than half the amount which the evidence as to the value of the sheep killed would justify, though there was no evidence on which the particular verdict could be based, so that it indicated an attempt by the jury to divide the loss.

PRATT, District Judge, dissenting.

Appeal from District Court, Third District, Salt Lake County; *P. C. Evans*, Judge.

Action by J. G. Cummings against Walker D. Hines, Director General of Railroads. Judgment for plaintiff, and defendant appeals.

REVERSED and REMANDED, with directions to grant a new trial.

*Dana T. Smith, Fred C. Loofbourow, Geo. H. Smith, John V. Lyle,* and *R. B. Porter,* all of Salt Lake City, for appellant.

*Olson & Lewis,* of Salt Lake City, for respondent.

FRICK, J.

The plaintiff brought this action to recover the value of 35 head of sheep, which were killed through alleged negligence in the operation of a passenger train over the line of the Los Angeles & Salt Lake Railroad at a high rate of speed, and in

not arresting the speed of the train or stopping the same so as to permit said sheep to pass from the track, over which they were being driven, on February 19, 1918, in Tooele county. The defendant denied the alleged negligence, and as an affirmative defense set up contributory negligence on the part of plaintiff's herder in negligently driving said sheep onto the track at the time and place aforesaid. A trial to a jury resulted in a verdict in favor of the plaintiff, upon which judgment was duly entered, from which the defendant appeals.

While a number of errors are assigned, only three are argued in defendant's brief:

(1) "That the evidence is insufficient to support a finding of negligence on the part of the defendant;" (2) that plaintiff's herder who was in charge of the sheep was guilty of contributory negligence as a matter of law, which was the proximate cause of the accident; and (3) that "the jury's finding as to the damages is contrary to the uncontradicted evidence, and there is no evidence whatever to support it."

In view that the judgment must be reversed for the reasons hereinafter stated, and for the further reason that we are in doubt respecting the first assignment, no purpose could be subserved in discussing that assignment of error at this time, and hence we refrain from doing so. In referring to the evidence we shall refer only to that part which relates to the second assignment, omitting, so far as possible, all reference to the alleged acts of commission or omission on the part of the railroad operatives.

The evidence is without dispute that the land at and for some distance surrounding the place where the accident occurred was still a part of the public domain, and was open country, covered with sagebrush and other verdure; that the open country extended about 12 miles east and about 1½ miles west of the railroad track to the mountains, and perhaps for similar distances north and south along both sides of the track; that the territory aforesaid at the time was, and for a number of years prior thereto had been, used for a winter range for sheep in considerable numbers; that the plaintiff ranged about 2,000 head of sheep at said place all

of which were in charge of and under the control and direction of a herder; that from and after the 25th day of January to the 19th day of February, 1918, the herder drove the herd of sheep back and forth at different points of the track from the east side to the west side thereof and back again; that, according to the herder's statement, the sheep were driven westerly to the mountains to obtain snow in place of water, and after they had been "snowed," as he called it, they would be driven back again to the east side of the track; that the country is wild, open country, without any habitation to speak of; that the sheep, the herder said, were thus driven "almost daily" from one side of the track to the other; that at the place where he drove the sheep across the track on the day of the accident the track ran north and south, and he could see the trains coming in his direction for about one mile and perhaps a little farther; that he knew there were several passenger trains passing in each direction daily, and he knew the time of day the train which killed the sheep in question usually passed that point, that for several days it had been running late, some days as much as an hour; that on the day of the accident, at about noon or a little after, and at about the time the fast passenger train was due from the south, the herder drove about 2,000 head of sheep from the west to the east side of the track; that he drove them somewhat leisurely across the track, and when all were across except about 200 head he saw the passenger train coming "through a cut" and "around a bend" about a mile to the south at great speed; that some of the sheep were on the track crossing over it and some others of the 200 ran onto the track in front of the approaching train when it whistled, so that 28 were killed outright and 7 more injured so that they died. There was no crossing at the place where the accident occurred, but the sheep, as before stated, had been driven back and forth over the track for the purpose stated. It also appeared that the engineer in charge of the train knew that the herd of sheep in question and some other herds were ranged over the territory aforesaid, and that the herd in question was in charge of a herder. The herder said he thought the

train was about an hour late on the day in question, and it was in fact about 45 minutes late. The day was clear, and there was nothing which prevented the herder from driving the herd across the track at any other time, either before the time of the arrival of the train or after that time.

Defendant's counsel insist that in view of the foregoing undisputed facts the herder was guilty of negligence as a matter of law, and that such negligence was the proximate cause of the accident. Keeping in mind the fact that the sheep were in charge of and under the direct control of the herder, which fact was known to the engineer, and that there was no public or other crossing, and no habitation at or near the place of the accident; that the herder knew the precise schedule of passing time of the train in question; that it was a fast passenger train; and that he had practically all of the day in which he could in perfect safety have driven the sheep across the track at any point within several miles distance north and south—we can see no escape from counsel's contention. While it is true that the point at which the sheep were being herded was still a part of the public domain, and that it did not constitute an actionable trespass for the herder to drive the sheep onto the right of way of the defendant or over its track, yet it is also true that the defendant had the exclusive right to the use of the track at all times at the point of the accident, and that the right of the sheep owners in passing over the right of way and track did at most amount to a mere temporary license to pass, and was thus a mere qualified right, subject to the rights of the defendant. This is not a case where for a long period of time the track had been used with the knowledge and consent of the defendant by the public, or by a considerable number of persons for a special purpose, so that a right of passage had been created. Moreover, in the case at bar the track was not being used at any particular point or place as a crossing, but was being crossed at any point where, for the time being, it was most convenient for the sheep to be driven across from one side of the track to the other for the purposes before stated. Under such circumstances those who used the track

for the purpose of crossing were required to do so at times and places where the track was not being used, or likely to be used, by the defendant. In view of those facts, the defendant was under no special duty to maintain a constant watch or lookout for those who might be passing over the track, but was required to exercise ordinary care only in that regard, and to the end that injury would not be inflicted after the operatives of the train knew, or, in view of the duty imposed upon the defendant as aforesaid, should have discovered that any one using the track or any animal passing over it was in peril of danger. The law applicable under the circumstances just referred to is well stated by the Supreme Court of Wyoming in the case of *Martin* v. *C., B. & Q. Ry. Co.*, 15 Wyo. 493, 89 Pac. 1025, where, in the course of the opinion, it is said:

"It may be conceded, and this court has held, that cattle upon the open range, which stray upon and depasture the uninclosed land of a person other than their owner, are not trespassers to the extent that an action would lie in favor of the owner of the land. So it may be said that injury to the right of way of a railroad by cattle under like conditions would not be actionable trespass. It does not, however, follow that because no action is given under such circumstances the cattle are so lawfully upon the right of way as to make the railroad company an insurer of their safety. The plaintiff is presumed to have known that in the absence of a fence the cattle would be liable to stray upon the right of way and be killed; he was equally chargeable with notice that there was no obligation, so far as the damage here complained of is concerned, to keep the fence in repair, and that it was liable to become defective and insufficient to turn his stock. Charged with such knowledge, he took all risk in permitting his cattle to run at large, of injury to or destruction of them by mere accident, but no risk of such injury or destruction by defendant's negligence. *Kerwhacker* v. *C., C. & C. R. R. Co.*, 3 O. St. 172. It should be borne in mind that the rules governing liability for injuries at railroad crossings are predicated on different premises."

To the same effect is *C., B. & Q. Ry. Co.* v. *Cash*, 24 Wyo. 316, 157 Pac. 701.

The rule respecting the liability of a railroad company for killing sheep which have passed onto its tracks and which were in charge of and under the control of a herder is also

well stated by the Supreme Court of Oregon in the case of *Keeney* v. *O. R. & N. Co.*, 19 Or. 291, 24 Pac. 233, 42 Am. & Eng. R. R. Cases, 619, in the second headnote, which correctly reflects the decision, in the following words:

"*Stock in charge of herder—Contributory negligence.*—Stock in charge of a herder and subject to his control is not stock running at large, as the places whither they wander and feed, or lie down to rest, are selected by him and subject to his direction and control; and if he voluntarily drives and leaves them uncared for in a place of danger along a railroad track where injury is likely to happen to them as a probable consequence, and they are killed, his act will be regarded as the proximate cause of the injury, and preclude the owner from recovery."

Cases in support of the rule are cited in the opinion. See, also, 3 Elliott, Railroads (2d Ed.) § 1209, under the heading of "Contributory Negligence respecting the killing of animals on railroad tracks." It is there said:

"Stock in charge of a herder who permits them to escape and wander upon a railway track where they are injured will be regarded as injured because of the negligence of the herder in suffering them to escape, and for their injury the company is not liable."

It certainly is most unreasonable to contend that one in whose charge sheep are placed may drive them over or onto a railroad track, at a time when he knows a fast passenger train is due, without being charged with negligence. Indeed, in view of what might happen to the passengers in case of a collision, such conduct might well be characterized as negligence. While plaintiff's counsel in their brief assert that the herder's conduct did not constitute negligence, yet they fail to cite any authority in support of their contention, and, in the writer's judgment, none could be cited. Moreover, it is not easy to perceive why the public who must ultimately pay the cost of operating railroads should be called upon to bear the burden, where, as here, there was no necessity whatever for driving the sheep over the track at the time it was done.

We remark that, in view that there is no claim made by either side respecting the doctrine of discovered peril, or what is commonly called the last clear chance doctrine, we have purposely refrained from alluding to or discussing that doc-

trine. It may be said in passing, however, that in view of the state of the record as it now stands and of the duty the law imposes upon the engineer under the circumstances disclosed, and in further view of the fact that neither side has alluded to or discussed the doctrine referred to, it would, to say the least, be very unfair to the party against whom the question were decided to pass upon that question at this time. We therefore refrain from so doing.

This brings us to the last assignment, namely, that there is no evidence in support of the amount of damages allowed by the jury. It is true that there is no evidence in support of the precise amount awarded, but there is ample evidence in support of a larger amount. It is quite clear that what the jury attempted to do in this case was to divide the loss between the plaintiff and the defendant, and therefore allowed the plaintiff somewhat in excess of one-half of the proved value of his sheep. In all probability in arriving at that conclusion the jury was prompted to do so by the conduct of the herder in driving the sheep across the track at the time and in the manner he did. The mere fact, however, that the jury allowed the plaintiff damages in an amount less than they might, under the evidence, have done, is not sufficient in itself to set aside their verdict at the request of the defendant. In that respect the defendant is the favored party, and in the eye of the law has not been injured in a substantial right, and therefore cannot complain because the amount allowed was less than should have been allowed if, as a matter of law, the defendant was otherwise liable in damages. Nor is the fact that the plaintiff might have successfully assigned error upon that question sufficient reason for permitting the defendant to do so.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court of Salt Lake county, with directions to grant a new trial, defendant to recover costs of the appeal.

CORFMAN, C. J., and THURMAN, J., concur.

GIDEON, J., concurs in the order reversing the judgment and remanding the case for a new trial.

WEBER, J., being disqualified, did not participate herein.

PRATT, District Judge (dissenting). The plaintiff brought this action to recover the value of 35 sheep which he alleges were negligently killed by a north-bound passenger train of the Los Angeles & Salt Lake Railroad Company in Tooele county, Utah, on the 19th day of February, 1918. The case was tried to a jury, and a verdict was rendered for the plaintiff in the sum of $437.50, upon which judgment was entered April 3, 1919. Defendant appealed.

It is contended by counsel for appellant that the judgment should be reversed for the reason, among others, first, that the evidence is insufficient to support the jury's finding of negligence on the part of the defendant; second, that the evidence shows conclusively that plaintiff's agent in charge of the sheep was guilty of contributory negligence, and the trial court therefore erred in refusing defendant's request to direct a verdict for the defendant. It appears from the evidence that the railroad track of the Los Angeles & Salt Lake Railroad traverses a valley which for some years before the accident had been used, and at the time of the accident was being used, as a winter range for sheep. It was the frequent practice of herders in charge of sheep on this range to drive them across the track from the lower levels on the east side of this track to the higher on the west side and back for snow or grazing purposes. This practice, as well as the fact that the valley was a winter range for sheep, was known to the operatives, and particularly to the engineer of the train which ran into and killed plaintiff's sheep. "Sheep were in the habit of grazing along that section in charge of herders, and we saw them daily as we passed by," said the engineer. The accident occurred about one mile north of a siding known as Pehrson's siding or switch. The track at the switch curved to the southeast, back of a hill, and through a cut, so that, according to plaintiff's evidence, from the place of the acci-

dent a train coming north could not be seen until it rounded this curve, from which northward the track was straight and ran over a flat, open country, affording an unobstructed view from the switch for two miles north, unless it is true, as the evidence on behalf of the defendant tended to show, that the country was somewhat rolling and there were knolls of ground which, with the sagebrush and snow, prevented the engineer in the cab of the engine from seeing or distinguishing sheep on either side of the railroad unless they were in the slight cut through which the track ran or were bunched together on either side of the track. "But," said the engineer, "if they were crossing the track, they could be seen from a distance of a half mile to a mile."

Plaintiff's sheep, consisting of about 2,000 head, had been ranging in the valley since December 4, 1917, in charge of a herder by the name of McKenzie, who had moved them into the territory immediately surrounding the place of the accident about January 25, 1918. The accident occurred about 1:30 p. m. on February 19, 1918. The herder testified that until 9 o'clock on the morning of the accident the sheep had been grazing near the hills west of and about one mile from the track. At that time he began moving them to the north and east, intending to drive them across the track to the lower flat on the east side. He drove them northerly about a mile to a point about one-half mile west of the track, and thence easterly to the track, arriving there about 1 o'clock p. m. He knew that the passenger train from the south was then due, and that it was late. The day before it had been a little more than an hour late; the day before that it was about an hour late, according to his testimony on cross-examination. On arriving at the track he left his position at the rear of the sheep, which now covered an area of about 300 yards square, or 90,000 square yards, and went upon the track to the south of the band of sheep to see whether or not the train was coming, and, neither hearing nor seeing it, he began, as he said, "to work the sheep" across the track. He testified that they grazed as he drove them. All had gotten over the track and were on the flat east of it except about 200, which he was

moving across the track, when he saw the train at the switch, a mile away, coming as fast as he had ever seen it come. It was shown that its speed was about 45 miles per hour. It was then about 45 minutes late, according to the testimony of the engineer and conductor. The herder had testified that it was about one hour late. He therefore knew approximately its schedule time. He testified that he saw at once that he could not move the remaining 200 sheep across the track before the train would be upon them, and therefore he tried to drive them off the track and keep them on the west side while the train passed. In this he failed, as he said the train whistled about 100 yards away, and some of the sheep ran upon the track in front of the train; 28 of them being killed outright and 7 being so badly injured that they died.

The engineer of the train testified that he saw the herder first when the train was about 700 feet from him, but did not then see the sheep. The herder was on the east side of the track, lying on the ground, said the engineer. He immediately sounded the whistle to attract the herder's attention. The train had gone on to a point about 400 feet from the place of the accident before he observed the sheep. They appeared from the west side of the track, and were running across to the east side. The herder tried to stop the sheep from coming across the track. The engineer testified that as soon as he saw the sheep he applied the emergency brakes, but could not stop the train until it struck the sheep and had gone several car lengths beyond. Evidence was elicited from witnesses for the defendant tending to show that the train could have been stopped in 700 to 1,000 feet.

In this class of cases three elements must concur in order to constitute actionable negligence: First, a duty on the part of the defendant to exercise due care to prevent injury to the plaintiff; second, failure to discharge that duty; third, injury to plaintiff proximately resulting from such failure. *Smalley* v. *Railroad*, 34 Utah, 450, 98 Pac. 311, 20 R. C. L. 11, note 8, and cases. To which may be added a fourth, namely, freedom from negligence on the part of the plaintiff proximately contributing to the injury. Contributory neg-

ligence, in this jurisdiction, is a matter of defense, unless it appears from the evidence of the plaintiff. *Smith* v. *Ogden & N. W. R. Co.*, 33 Utah, 129, 93 Pac. 185.

The basic element of duty, as applied to actions founded upon negligence, is knowledge, actual, or implied, of circumstances requiring the exercise of care. 30 R. C. L. 12, note 17 and cases. Or, as stated in *Commonwealth* v. *Pierce*, 138 Mass. 165, 52 Am. Rep. 264, ''a man's liability for his acts is determined by their tendency under the circumstances known to him.'' Statutory duties are sometimes imposed which modify to some extent the rules above stated, but we are not concerned in this case with such duties. It is contended by counsel for the appellant that the defendant was under no duty to the plaintiff to keep a lookout for his sheep or other live stock that might be upon or in dangerous proximity to the railroad track; that a railroad company is liable only when, having discovered animals upon or in dangerous proximity to its track, its servants fail to exercise due care to prevent injury to them. On the other hand, respondent's counsel contend that the engineer not only saw the sheep in time to prevent the injury to them, if he had exercised due care to do so, but the circumstances known to him were such that he ought reasonably to have anticipated that sheep might be on, dangerously near, or crossing over, the track in that vicinity, and therefore he was charged with such knowledge that it became his duty to keep a reasonable lookout for them so as to avoid injuring them.

The trial court instructed the jury as follows:

"It is the duty of a railroad company, in the operation of its trains through open country used for the grazing of sheep or other animals which come upon and are moved across its right of way, to keep a reasonable lookout for the presence of such animals upon or along its track or right of way, and to exercise reasonable care to avoid injuring them or killing them. And if, by keeping such reasonable lookout, the presence of sheep or other animals could be observed upon the track, or at or near the track, and about to go upon the same at a point far enough ahead that the engineer by slowing down or stopping the train, could reasonably avoid striking them, then a failure to do so would constitute negligence."

The defendant excepted to this instruction. Appellant's contention is based upon the assumption that plaintiff's sheep were trespassing on the track and right of way of defendant, and that the engineer of the train did not discover their peril until, as he testified, the train was about 400 feet from them, when he immediately applied the brakes and made every reasonable effort to avert the accident. Impliedly, therefore, counsel for the defendant concede the rule that, if the engineer had knowledge of the peril of these sheep in time to avert the accident, by the exercise of ordinary care and diligence, it was the engineer's duty to do so, even though they were trespassing animals.

While not decisive of this case, it is well to inquire, first, whether these sheep were in fact trespassing on the railroad and right of way of the defendant. It should be borne in mind that plaintiff's sheep were not permitted to roam at large, regardless of the consequences that might ensue, but they were in charge of a herder who exercised control over them; they grazed upon the public land extending on each side of the track, which for years had been used as a winter range for sheep, and where they had a right to be. Herders of sheep in that vicinity were accustomed to drive them across the railroad track and back for grazing purposes, and in order to get from one part of the public domain to the other, on opposite sides of the track, it was necessary to drive them across the track. No attempt had ever been made by the railroad company to exclude them by fencing its right of way. The testimony on the part of the plaintiff tended to show that the sheep were merely being driven across the railroad track at the time and place of the accident, so that they might be permitted to graze on the other side. Under such circumstances they cannot be considered as trespassers. *Buford* v. *Houtz,* 5 Utah, 591, 18 Pac. 633; Id., 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618; *Harris* v. *M. K. & T. Co.,* 24 Okl. 341, 103 Pac. 758, 24 L. R. A. (N. S.) 858, and note; *Eddy et al.* v. *Evans,* 7 C. C. A. 129, 58 Fed. 151.

If, however, it be assumed that these sheep were in fact trespassing upon the railroad track and right of way of the

defendant, nevertheless the circumstances of this case were such that the general rule applicable to trespassing animals should not be applied. The rule that a railroad company owes no duty of care to persons or animals that may be trespassing upon its railroad track until they are discovered has its limitations or exceptions.

In *Southern R. Co.* v. *Chatman* (124 Ga. 1026, 53 S. E. 692), 6 L. R. A. (N. S.) 283 (4 Ann. Cas. 675) it is said:

"Where the circumstances are such that the employees of the company in charge of one of its trains are bound * * * to anticipate that persons may be upon the track at a certain place, they are under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence."

See, also, note 8 L. R. A. (N. S.) 1076.

In the case of *Illinois C. R. Co.* v. *Murphy* (123 Ky. 787, 97 S. W. 729, 30 Ky. Law Rep. 93) 11 L. R. A. (N. S.) 355, the Kentucky Court of Appeals, in speaking to the question as to whether the rate of speed of a train passing through a town where people are known to use the tracks for passing may be negligence, said:

"We will not say that to dash at uncontrollable speed through such a town, where people are known to be using the tracks for passing, is not negligence. Let the jury say whether it is. The trial court did not submit this phase of the case to the jury. On the contrary, it was assumed that the company had the right to run its trains at that point at any rate of speed it desired, but that it must keep a lookout for trespassers; and, if those in charge of the train saw, or by the exercise of ordinary care could have seen, decedent in time to have avoided injuring him, it was their duty to do so. There are cases which hold that the rate of speed in towns may or may not be negligence, without respect to an ordinance; and it is held that, where trespassers are on the railroad track, their presence being unknown, the rate of speed is never negligent as to them, because no duty whatever was then owed to them by the railroad company. But we think the correlative principle must apply that, where there is knowledge of the presence of trespassers or licensees, or, what is equivalent, notice of their expected and probable presence, the rate of speed may be negligent as to them, because there is then a duty to them, viz., to look out for them, and take care not to run over them or injure them."

It was held in *Garner* v. *Trumbull*, 36 C. C. A. 361, 94 Fed. 321:

"When   *   *   *   for a considerable period numerous persons have been accustomed to walk across a railroad track or along a railroad track between given points, either for business or pleasure, railroad engineers should take notice of such practice, and, when approaching such places should be required to exercise reasonable precautions to prevent injuring them.   Knowing the usage which prevails, they may reasonably be required to anticipate the probable presence of persons on or near the track at such places, and to be on the lookout when their attention is not directed to the performance of their other duties."

The same principle was applied in the case of *Young* v. *Clark*, 16 Utah, 42, 50 Pac. 832, where a railroad company had for a long period of time acquiesced in the use by the public of its railroad bridge spanning Ogden river in Weber county, Utah.   It was there held it was the duty of the company under the circumstances to keep a reasonable lookout for persons that might be walking on the bridge.   See, also, *Christensen* v. *O. S. L. R. Co.*, 29 Utah, 192, 80 Pac. 746; *Teakle* v. *Railroad Co.*, 32 Utah, 285, 90 Pac. 402, 10 L. R. A. (N. S.) 486; *Palmer* v. *Railroad Co.*, 34 Utah, 466, 98 Pac. 689, 16 Ann. Cas. 229; *Gilligan* v. *D. & R. G. Co.*, 43 Utah, 547, 136 Pac. 958, 50 L. R. A. (N. S.) 1191.

The underlying principle seems to be, as hereinbefore stated, that the basic element of duty is knowledge of circumstances which if not heeded, may result in injury to another. Where, therefore, it is said that one is under no duty to prevent injury to a trespasser until his peril is discovered, the true reason is that there is ordinarily no reason to anticipate a trespass, or to anticipate that another, by his own wrongful act, will place himself in a position of danger.   *Tutt* v. *Ill. C. R. Co.*, 104 Fed. 743, 44 C. C. A. 320.   A prudent man may ordinarily rely upon the common experience of mankind in that respect.   This reason is not always assigned.   The doctrine is often stated as though one would be justified in maiming or otherwise injuring a trespasser if one merely refrains from seeing him in his perilous position until it is too late to avoid the injury.   The law is or ought to be more hu-

mane.  From the point of view of the average prudent man
there would be no difference between passive indifference to
known circumstances, significant of probable danger to another
or to another's property, even though that other were a tres-
passer, and failure to exercise due care towards such a person
after discovery of his presence in a position of danger.  It ought
to be said, in either case, that the person whose conduct is
in question is charged with notice of the other's danger,
whether it be discovered by the sense of sight or by reasoning
faculties.  If, for illustration, the engineer was informed that
just beyond the curve a band of sheep, driven by a herder,
is crossing the track, what would be thought of the reply:

"Well, I don't see them; this is the track of the company for
which I work; I shall go ahead, regardless of their safety, until
by the sense of my own eyesight your information is confirmed;
then if I can avoid injuring them I shall try to do so, not other-
wise; the law will justify me."

May not circumstances known to him give him equivalent
notice or information of the danger?  The truth is, in my
opinion, that a trespass may be merely a fact or circumstance
—often an important one, it is true—sometimes decisive of
the case as a matter of law, but, nevertheless, a circumstance
to be considered by the jury, or the court, in proper cases,
with all the other circumstances, which may confront a man
in the happenings of this world in order to determine whether
his conduct was prudent or negligent, or what his duty was
in the premises, and when it arose and whether he failed in
that duty.

The engineer, as the record shows conclusively, had knowl-
edge of circumstances rendering it reasonably probable to the
average prudent man, and therefore to the engineer, that the
sheep in question, or others, might be on or crossing over de-
fendant's right of way and track in the vicinity of the acci-
dent; he had knowledge of the fact that the valley traversed
by the railroad track, and particularly in the vicinity of the
track, had been for many years used as a winter range for
sheep.  He testified that in passing through he had seen them
daily along the section where the accident occurred, and that

he knew of the practice of driving them across the track and back from one part of the range to the other. These facts being conceded, the case was one in which the ordinary rule applied to trespassing animals or persons did not apply. In my opinion, therefore, the trial court did not err in charging the jury as a matter of law that it was the duty of the railroad company to keep a reasonable lookout for sheep that might be upon the defendant's track. While it may be doubted that the general proposition of law is as broad as stated by the court, the jury could not have understood this instruction to mean more than that such duty to keep a reasonable lookout existed under the peculiar facts of this case. The evidence tended not only to show that the engineer had not kept a proper lookout for sheep that might be upon the track, but there was evidence tending to show that he could have seen them in time to avert the accident if he had looked; and he himself testified that he kept a constant lookout for sheep, and that if they had been passing over the track he could have seen them from a distance of a half mile to a mile from the place of the accident. So also the jury might reasonably have found that the engineer actually saw the sheep in time to prevent injury to them, if he had exercised proper care to do so. There was evidence, therefore, to support the finding of the jury as to the negligence of the defendant.

The question of the plaintiff's contributory negligence may be disposed of in fewer words. I am clearly of the opinion that plaintiff's herder was guilty of negligence in attempting to drive the sheep across the track at the time and in the manner he did, as shown by his own testimony. He arrived at the track with his sheep at about 1 o'clock p. m. When he reached the track, or the immediate vicinity of the track, his sheep covered an area of 300 yards square, or 90,000 square yards, evidently being somewhat scattered. He left his position at the rear of the sheep, and went upon the track south of them in order that he might better, or perhaps sooner, see the train if it should suddenly appear at the switch a mile away. He knew that the train was due and might make its appearance at any time. He fully appreciated

the danger or risk of attempting to drive the sheep across the track at that time and place, as evidenced by the fact that he went upon the track for the purpose of looking to see if the train was coming. Neither hearing nor seeing it, he decided to take the risk, and, as he expressed it, was "working the sheep" across the track when the train made its appearance at the switch. At this time 1,800 of the sheep had been driven across the track, and the remaining 200 were about to cross or were crossing. He said that he realized at once the impossibility of driving them across before the train would be upon them, and he immediately tried to drive them back and keep them on the west side. He was unable to do so, as when the train was about 100 yards away, as he said, the whistle was sounded, and some of the sheep ran upon the track in front of the train and were killed by it. There can be but one reasonable conclusion; all reasonable men would agree under such circumstances that the conduct of the herder was negligent. It does not follow, however, that the plaintiff was not under the circumstances entitled to recover. The trial court had properly instructed the jury that the plaintiff could not recover if the herder was negligent and his negligence proximately contributed to the injury; and the term "proximate cause" was defined by the court. It therefore became a question for the jury to decide under the circumstances of the case as to whether the plaintiff's negligence was or was not one of the proximate causes of the accident. The evidence tends to show that it was not. When the herder saw the train at the switch, coming with great speed, he endeavored immediately to keep the remaining 200 sheep off the track, in other words, to drive them back and away from the track so that the train might pass without injuring them; but the coming of the train and the sounding of the whistle evidently alarmed them, and he was unable to do so. Some of them ran upon the track, and, as the engineer testified, became bunched there and were killed. The engineer himself testified, as also did the fireman, that plaintiff's herder tried to drive the sheep back from the track. The only conflict of evidence respecting the herder's effort in that particular was

as to when he made effort to drive the sheep out of danger, the engineer having testified that when he first saw the herder he was lying upon the ground east of the track, and the train was then 700 feet away, and that upon the sounding of the whistle the herder thereafter made an effort to get the sheep off the track. The jury must have found otherwise and in accordance with the testimony of the herder. It may be said, therefore, that the negligence of the herder was not continuing negligence up to the time of the accident, but ended, when he saw the train at the switch a mile away, according to his testimony, at which time he endeavored to avoid the consequences of his own, as well as defendant's, negligence and we must assume, of course, that he made a reasonable effort to do so, in view of the jury's finding.

The situation, therefore, is this: The engineer, after the train had rounded the curve and switch, from which point northward for a distance of a mile, to the place of the accident his vision was unobstructed, and from which point, according to his own testimony, he could have seen the sheep, if they had been upon the track, either did see them in their position of danger and failed to exercise due care to so manage and control his train as to prevent injury to them, or in the exercise of a proper vigilance he might have seen the sheep in their position of peril and prevented injury to them by the proper management and control of his train, notwithstanding the negligence of plaintiff's herder, whose foolhardy act of attempting to drive the sheep across the track at the time and place in question contributed merely as a condition or a remote cause of their injury. In other words, the jury may have found with reason, under the circumstances of the case, that the engineer had the last clear chance of avoiding the effect of the herder's negligence, and that plaintiff's negligence did not concur in point of time or as a matter of fact with that of defendant in causing the accident. Such a finding by the jury could not be said to be unreasonable or contrary to the evidence in the case.

The following cases very clearly point out when and under what conditions contributory negligence is to be treated rather

as a remote cause or a mere condition of the injury than as a proximate cause: *Thompson* v. *S. L. R. T. Co.*, 16 Utah, 281, 52 Pac. 92, 40 L. R. A. 172, 67 Am. St. Rep. 621; *Hall* v. *Ogden City R. Co.*, 13 Utah, 258, 44 Pac. 1046, 57 Am. St. Rep. 726; *Pilmer* v. *Boise Traction Co.*, 14 Idaho, 327, 94 Pac. 432, 15 L. R. A. (N. S.) 254, 125 Am. St. Rep. 161; *Grand Trunk R. Co.* v. *Ives*, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485. See also 1 Thomp. Neg. 221, § 232; 22 R. C. L. 143, 144 §§ 27, 28.

No prejudicial error appearing, in my opinion the judgment of the lower court should be affirmed.